445 A.2d 1222

**Christine T. HABECKER and Harry L. Habecker, her husband, Appellants,**

**v.**

**NATIONWIDE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1981.

Filed May 14, 1982.

464

Lee C. Swartz, Harrisburg, for appellants.

Mary Jane Forbes, Harrisburg, for appellee.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

This appeal from a motion granting summary judgment to the insurer appellee presents an issue of statutory construction involving the time span over which an insurer will be liable for "replacement services" payments provided under Section 202(c) of the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.202(c).

Again, this court is asked to interpret ambiguous language in the No-Fault Act. "Replacement services loss" is defined as "expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the victim would have performed, not for income, but for the benefit of himself or his family if he had not been injured." 40 P.S. § 1009.103. Section 202(c) provides that "[r]eplacement services loss ... shall be provided up to a daily maximum of twenty-five dollars ($25) for an aggregate period of one year." [1]

The appellant insured, Christine T. Habacker, contends that she suffered serious injury in an automobile accident. As a result of her injury, she was unable to perform her usual housework. She hired a housekeeper initially on a daily basis and then for one or two days each week. The

1. At the time of the accident, appellants were insured under Nationwide Century II Auto Policy, No. 58B368–884. Endorsement 1232 of that policy, entitled "Pennsylvania Basic Personal Injury Protection (no-fault motor vehicle insurance)," stated that the policy provided "Basic Personal Injury Protection in accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act." The replacement services provision of this endorsement reads: "We will pay reasonable expenses incurred for hiring ordinary and necessary services an insured would have performed—but not for income—for himself and his family had he not been injured. Such expenses must be incurred during the insured's life-time. In connection with any one accident, we will pay this benefit up to a maximum of $25 per day for a maximum of one year." The parties impliedly agree that this endorsement assures the minimum replacement services coverage required by the No-Fault Act.

insurer reimbursed her for housekeeping expenses incurred during the twelve months after her accident. However, her injuries were long lasting. Even after a year from the date of the accident, she continued to need replacement services. The insurer, however, refused her requests for further reimbursements.

The trial court granted summary judgment to the insurer finding that the statute required replacement services payments for only one calendar year from the date of the accident. The appellant contends that under the No-Fault Act, she is entitled to reimbursement for three hundred sixty-five days of such services, even when these replacement services days occur more than a year after her injuries. We agree with the appellant and accordingly reverse.

This case requires this Court to construe for the first time the meaning of the phrase "daily maximum of twenty-five dollars ($25) for an *aggregate* period of one year." (emphasis added). If the word "aggregate" was not included in the statutory language, it would be clear that reimbursement would be limited to a single one year stretch of time. However, the inclusion of the word "aggregate" raises an ambiguity as to what the phrase means and what the Legislature intended.

Under the Statutory Construction Act of 1972, we are required to construe statutory words and phrases "according to rules of grammar and according to their common or approved usage." 1 Pa.C.S.A. § 1903; *Commonwealth v. Hill*, 481 Pa. 37, 391 A.2d 1303 (1978). The term "aggregate," used as an adjective, means "formed by a collection of units or particles into a body, mass, or amount..." *Webster's Third New International Dictionary, 41.* See *Estate of J. Henry Miller, Deceased,* 110 Pa.Super. 384, 386; 168 A. 807 (1933). This word, therefore, can only modify a noun denoting something made up of two or more parts. In this statute, "aggregate" modifies "period," which is also modified by the prepositional phrase "of one year." Appellee

contends that the phrase "period of one year" means a single, continuous stretch of time of 365 days' duration. This contention on its face is foreclosed by the Legislature's use of the term "aggregate," which requires the relevant period to be a collection of two or more specific quantities of time.

If the phrase "period of one year" is interpreted to mean such a single continuous stretch of time, the word "aggregate" would have no discernable meaning. Appellee in effect asks the Court to interpret the words "aggregate period of one year" to read simply "period of one year." If the legislators had meant that insureds should be eligible for replacement services for a single one year stretch of time, they could have simply stated that the insured would be eligible for replacement services for a period of one year. Appellee implicitly recognizes this weakness in his argument when he contends that the word "aggregate" as used here serves solely to "emphasize that payments are payable only to the extent they are incurred within one year." (Appellee's Brief, p. 8.) Such an interpretation of "aggregate" is inconsistent with accepted definitions of that word.

In the alternative, appellee argues that the Court should construe the statutory language so that the word "aggregate" modifies the phrase "[r]eplacement services loss" instead of the phrase "period of one year."[2] Since the word "aggregate," as positioned in Section 202(c), clearly does not modify "[r]eplacement services loss," we must reject that suggestion. Thus, appellee's suggestions either do violence to the plain meaning of the adjective "aggregate," or to the simple grammatical positioning of the word "aggregate" in the statutory phrase at issue.

Other portions of the Statutory Construction Act also support our view that the statute should be read, as appellants suggest, to mean that replacement services benefits should be available to her for an aggregate period of 365 days.

2. This is also the position taken by the trial court, which relied on *Easton v. Aetna Life and Cas. Ins. Co.*, 31 Cumberland L.J. 96, 98 (1980).

■ First, where a statute is unclear, as here, we are bound to consider legislative purpose. 1 Pa.C.S.A. §§ 1921(a), 1921(b); *Commonwealth v. Hess,* 270 Pa.Super. 501, 411 A.2d 830 (1980).

■ One of the stated purposes of the No-Fault Act was to achieve the "maximum feasible restoration of all individuals injured in motor vehicle accidents on Commonwealth highways....," and to provide a "low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims ... so that every victim has the opportunity to: (A) receive prompt and comprehensive professional treatment; and (B) be rehabilitated to the point where he can return as a useful member of society and a self-respecting and self-supporting citizen." 40 P.S. §§ 1009.102(a)(3), 1009.102(a)(9).[3]

Appellee does not suggest, nor does the record support the conclusion that it would not be feasible for it to provide replacement services at the statutory daily level for an aggregate period of 365 days. Indeed, we note that the New Jersey no fault statute, the Automobile Reparation Reform Act of 1972, provides a daily maximum of $12.00 for such expenses payable "during the life of the injured person," subject to a total limit of $4,380.00 for any one person for any one accident. N.J.S.A. 39:6A–4(c).

In addition, in construing this particular provision of the No-Fault Act, we are also guided by the principle of statutory construction that presumes that the Legislature did not intend a result that is "absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1). Under the interpretation urged by appellee, the replacement services provision would discriminate against victims like appellant, who needed replacement services for a few days a week, for a period longer than one year from the date of her injuries. Appel-

**3.** In addition, we note that where construction of insurance provisions is involved, there is a longstanding policy in this state to construe them liberally in favor of the insured in close or doubtful cases. *Heffner v. Allstate Insurance Co.,* 265 Pa.Super. 181, 186–188, 401 A.2d 1160, 1162–63 (1979), aff'm, *Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629, 633 (1980); 1 Pa.C.S.A. § 1928.

lant would, under this proposed reading, be entitled to only a small portion of the maximum allowable for replacement services loss. In contrast, a hypothetical victim whose recovery period was a year or less might recover all replacement services loss, even though the dollar amount was much greater than the appellant herein was entitled to collect. Because this hypothetical victim suffered all her replacement services loss within a year of the accident, she would be entitled to more benefits than the appellant herein, who over several years might require the same amount of replacement services. Such a disparity in treatment between victims who have suffered the same loss is clearly unreasonable.

Furthermore, the construction favored by appellee is also unreasonable in that it departs in at least three ways from the statutory scheme of the Act.

(a) Under the No-Fault Act, "replacement services loss," with "allowable expenses," "work loss," and "survivor's losses," constitute basic loss benefits. 40 P.S. § 1009.202. Limitations for aspects of basis loss coverage are defined in Section 202. For "allowable expenses" (disposition of remains), "work loss," and "survivor's losses," the legislative pattern defined limits in terms of dollar maximums, *i.e.* not more than $1500 for allowable expenses, not more than $15,000 for work loss, not more than $5,000 for survivor's loss. There is no indication that the Legislature intended to break this established pattern based on dollar maximums when it came to replacement services. We therefore resolve the inherent ambiguity in the language of Section 202(c) in favor of maintaining the pattern of basic loss benefits.

(b) If the Legislature had intended to impose the kind of temporal limitation that appellee advocates with regard to recovery for replacement services loss, it would have specified the precise time period relevant for the purposes of replacement services loss. In fact, the statute is silent on when such a time period should begin. If this Court accepted the view that the phrase at issue referred to a single stretch of time encompassing one calendar year, we would

next have to decide when the calendar year period begins to run against the victim. For the words of the statute do not specify whether the calendar year period begins at the time when the injury occurs, at the time when the victim incurs his or her first replacement services loss, or at the time when the first replacement services expense claim is submitted to the insurer.[4] This statutory silence on the time when the benefit year would begin to run becomes explicable, however, if one concludes that the Legislature intended to provide replacement services not for a particular duration of time with a specific beginning and end but for an aggregate of 365 days when these services were reasonably and actually incurred.[5]

(c) Appellee's interpretation of the provision is not congruent with the comparable provisions concerning survivor's loss benefits. "Replacement services loss" refers by definition to "expenses reasonably . . . incurred in obtaining ordinary and necessary services in lieu of those the victim would have performed, not for income, but for the benefit of himself or his family, if he had not been injured." These expenses, subject to a maximum daily amount and the temporal limitations at issue here, must be incurred during the lifetime of the victim.[6] If the victim dies, either at the

4. Section 202(e) states that ". . . replacement services loss may include provisions to provide: . . . (2) with respect to work loss or replacement services only, a waiting period not to exceed one week." 40 P.S. § 1009.202(e). Here, as in Section 202(c), there is no specific indication of when the waiting period might begin to run.

5. This legislative silence is to be contrasted with the explicit language contained in an analogous provision of the New York No-Fault Act, 1973:
"Basic economic loss means . . . all other reasonable and necessary expenses incurred, up to twenty-five dollars per day for not more than one year from the date of the accident causing the injury." McKinney's Insurance Law § 671(1)(c).

6. 31 Pa.Code 66.102 contains a model Basic Personal Injury Protection Endorsement. In this policy, "replacement services loss" is defined as "expenses reasonably incurred *during the eligible person's lifetime* in obtaining ordinary and necessary services replacing those he would have performed without pay or profit, for the benefit of himself and his family." (*emphasis added*). We do not take this

time of the accident, or subsequently, from injuries incurred in the accident, survivor's loss benefits, subject to a stated dollar maximum, permit recovery *inter alia* for "expenses reasonably incurred by a survivor or survivors in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for their benefit...." This aspect of "survivor's loss" is indistinguishable from the definition of "replacement services loss" except that it applies to the services a victim would have performed for the survivor or survivors but for his or her death. *Brandon v. Erie Insurance Exchange*, 264 Pa.Super. 258, 260, 399 A.2d 765, 766 (1978). If appellee is correct, benefits traceable to the same basic replacement services expenses would be subject to a temporal maximum if the victim lives, and a dollar maximum if the victim dies. Thus, a person who was unemployed or retired, or a non-wage earner, with the kind of injury suffered in this case, would be entitled to less for replacement services loss during her lifetime, than some survivors could conceivably have received if the victim had died of her injuries. It is hardly reasonable to suppose that the Legislature would have intended such an incongruous result.

In addition, the Statutory Construction Act disfavors surplusage. This Act requires that "[e]very statute shall be construed, if possible, to give effect to all its provisions," 1 Pa.C.S.A. § 1921(a), and permits the presumption that the Legislature "intends the entire statute to be effective and certain," 1 Pa.C.S.A. § 1922(2). The Legislature is presumed to have intended to avoid mere surplusage in the words, sentences and provisions of its laws. Courts must therefore construe a statute, if possible, so as to give effect to every word. *Commonwealth v. Driscoll*, 485 Pa. 95, 401 A.2d 312 (1979); *Masland v. Bachman*, 473 Pa. 280, 291, 374 A.2d 517, 522 (1977); *Daly v. Hemphill*, 411 Pa. 263, 273, 191 A.2d 835, 842 (1963); *Pa. Ind. for Blind and Handicapped v. Larson*, 50 Pa.Cmwlth. 95, 411 A.2d 1305 (1980).

language to be dispositive for the interpretation of the statutory phrase at issue here, but note that nothing in this model policy is inconsistent with our interpretation.

The Legislature chose the word "aggregate" to modify "period" in the phrase "aggregate period of one year." It is apparent that the use of this adjective is perfectly compatible with one common interpretation of the word "year," a quantity of time amounting to 365 days.[7] In contrast, to interpret the word "year" to mean a single span of time, as in "a calendar year," is to render the word "aggregate" meaningless. If "period of one year" means "a calendar year," what does the term "aggregate" add to the statutory sentence? In appellee's interpretation, replacement services benefits would be available to the insured for one calendar year after an accident. The word "aggregate" would consequently be surplusage.

We also reject appellee's argument that the "Definitions" section of the Statutory Construction Act, 1 Pa.C. S.A. § 1991, is dispositive of this case. Section 1991 defines the word "year" as "a calendar year." However, definitions under this section are applicable only when the context does not "clearly indicate otherwise." 1 Pa.C.S.A. § 1991; *Fox Chapel Area School District v. Dunlap*, 53 Pa.Cmwlth. 479, 417 A.2d 1329 (1980) (Statutory Construction Act definitions notwithstanding, the words "two years" in the statutory phrase "for two half school terms during a period of two years" held not to mean two calendar years). A review of the problems raised by substituting "calendar year" for "year" demonstrates that the instant case presents a "context [which] clearly indicates otherwise," and where, consequently, this part of the Statutory Construction Act should not control. The term "calendar year," unlike the term "year," unambiguously denotes a continuous 365 days stretch of time. "A calendar year" is not an aggregate, but a single span of time beginning on a specific date and ending 365 days later. The phrase "calendar year," substituted for the term "year" can not be harmonized with the term "aggregate." But the term "aggregate," when used to

7. *Webster's Third International Dictionary* gives as one definition of one year: "the time required for the apparent sun to return to an arbitrary fixed or moving reference point in the sky..." 2648.

modify the phrase "period of one year" is intelligible where "year" denotes an amount of time adding up to 365 days. To interpret "year" as "calendar year" is to render the term "aggregate" superfluous.

In addition, the substitution of the term "calendar year" for "year" exacerbates problems encountered in reconciling the Legislature's use of the term "year" with the term "aggregate." The term "calendar year" has generally been interpreted to mean the period from January 1 to December 31 of a specific year. *Fox Chapel Area School District, supra.* Cf. *Finch v. Fitzpatrick*, Fla., 254 So.2d 203 (1971); *Hawksley v. New Hampshire Interscholastic Athletic Association*, 111 N.H. 386, 285 A.2d 797 (1971). See, Annot. 5 A.L.R.3d 384 (1966). In the context of this provision, this construction would clearly be an absurdity. Persons injured in January of any year would, under such an interpretation, be eligible for replacement services for a longer time than persons injured in later months of the same year.

Appellee argues that the insured is eligible for replacement service benefits for one calendar year from the date of the injury. This argument would carry more weight if the statute clearly indicated when the replacement services benefits term began to run. Admittedly, some courts have construed the term "calendar year" to mean a period of time following a specific event or date. Annot. 5 A.L.R.3d 384, 392, 393 (1966). However, we must reject that argument here, where the statutory language refers to an "aggregate period of one year" and where the statute does not specify when the relevant one year period is to begin. And once again, the definition of "year" as "a calendar year" running from the date of the injury is inconsistent with the statutory scheme for dollar benefit limitations for other basic losses. It would also have the undesirable effect in some instances of allowing a survivor to collect a larger sum of money attributable to the loss of replacement services than a victim could have recovered if he or she had lived. See, *supra.*

We decline to accept appellee's interpretation which violates both long established rules of statutory interpretation,

474

and the stated purposes of the No-Fault Act. This Act clearly sought to provide reasonable replacement services benefits to compensate for the loss of those ordinary and necessary services that a victim, but for his injuries, would have performed for the benefit of himself or his family. A statute aimed at the "maximum feasible restoration of all individuals injured" should not be read substantially to deprive those individuals unfortunate enough to suffer long term injuries on our highways of needed replacement services benefits.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.