**In re Dennis Robert JOYCE, District Justice In and For Magisterial District 05–2–23.**

**In re Richard James TERRICK, District Justice In and For Magisterial District 05–2–15.**

**Nos. 2 JD 97, 3 JD 97.**

Court of Judicial Discipline of Pennsylvania.

Feb. 18, 1998.

Before McEWEN, President Judge, and MAGARO, MESSA, SYLVESTER, WEINBERG, SWEENEY, Jr., PANELLA and BYER, JJ.

MESSA, Judge.

These cases come to us on stipulated facts which arise out of separate but very similar occurrences. The charges against the Respondents are the same. We will make separate Findings of Fact and Conclusions of Law for each Respondent; but, since the same principles of law and judicial ethics will govern our analysis of the conduct of both Respondents and its import, we consolidate our discussion of these principles in this Opinion.

## I. *INTRODUCTORY SUMMARY— JOYCE, D.J.*

The Judicial Conduct Board (Board) filed a Complaint with this Court against District Justice Dennis Robert Joyce (Respondent). The Complaint consists of ten Counts based upon allegations that the Respondent improperly placed two telephone calls to influence the outcome of two cases. The first call was made on March 23, 1993 to Walter "Bo" Cross, the supervisor of the Statutory Appeals Unit of Allegheny County, and is the subject of Part A, paragraphs 4–14 of the Complaint, and Counts 1–5. The second call was made on May 20, 1993 to District Justice Jules Melograne, the District Justice serving Magisterial District Number 05–2–17, and is the subject of Part B, paragraphs 16–26, of the Complaint and Counts 6–10. Counts 3 and 8 have been withdrawn by the Board.

The Board and the Respondent have submitted stipulations of fact in lieu of trial

under C.J.D.R.P. No. 502(D)(1), and a waiver of trial. The Court hereby accepts those stipulations of fact in pertinent part, recited below, as the facts necessary for disposition of this case.

## II. FINDINGS OF FACT—JOYCE, D.J.

### 1. INTRODUCTORY

1. The Judicial Conduct Board (Board) is empowered by Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging ethical misconduct on the part of judges, justices or justices of the peace and to present the case in support of the formal charges before the Court of Judicial Discipline.

2. District Justice Dennis Robert Joyce (Respondent) is the duly elected district justice serving Magisterial District 05-2-23. Magisterial District 05-2-23 encompasses the Boroughs of Carnegie, Crafton, Ingram, Pennsbury Village, Rosslyn Farms, and Thornburg in Allegheny County.

3. Respondent commenced his judicial service on or about January 4, 1982. Respondent continues to serve as the district justice at the present time.

### 2. PART A

4. On or about November 10, 1992, Trooper Vaughn of the Pennsylvania State Police issued two traffic citations to Michael F. Moran (Moran) alleging that Moran had violated Sections 3334 and 4703 of the Pennsylvania Vehicle Code.

5. After Moran paid the required security, a hearing was scheduled before Senior District Justice Nicholas A. Diulus on February 4, 1993.

6. Moran failed to appear at the time set for the hearing and, in his absence, Senior District Justice Diulus found him guilty and imposed sentences of fines and court costs.

7. On or about February 8, 1993, Moran filed a notice of appeal pursuant to Pa.R.C.P. 86.

8. At that time, appeals from summary convictions in Allegheny County were heard by Statutory Appeals Unit located in courtroom number 822, Eighth Floor, City–County Building, Pittsburgh, Pennsylvania 15219. Walter ("Bo") Cross was the supervisor of the Statutory Appeals Unit.

9. Moran's appeal was heard in the Statutory Appeals Unit before Common Pleas Court Judge Raymond L. Scheib presiding on March 22, 1993.

10. Prior to that date Respondent called Walter Cross and stated that Moran was scheduled to appear before Judge Scheib for a hearing and that Moran was the brother of a district justice. The call by the Respondent was made in order to influence the outcome of, and impact favorably upon Moran's appeal.

11. At the conclusion of the hearing on March 22, 1993, Moran was found guilty of both charges.

12. Subsequent to that date, Respondent became aware that Moran had been found guilty. On or about March 23, 1993, the Respondent placed a telephone call to Walter Cross regarding the appeal of Moran. At that time, the Federal Bureau of Investigation was conducting an investigation of allegations concerning the Statutory Appeals Unit of Allegheny County and recorded that conversation by the use of interceptive devices and prepared a transcript of that conversation as follows:

*Incoming Call*

WALTER V. CROSS: "—Scheib's."

DENNIS JOYCE: "Uh, is Bo there?".

CROSS: "Speakin."

JOYCE: "Bo, Dennis Joyce."

CROSS: "Yes."

JOYCE: "How are you?"

CROSS: "Wonderful! How you doin'?"

JOYCE: "Okay."

CROSS: "What's up?"

JOYCE: "Uh ... ya had a hearing yesterday on a Michael Moran?"

CROSS: "Moran?"

JOYCE: "Yeah."

CROSS: "Okay."

JOYCE: "M-o-r-a-n."

CROSS: "All right."

JOYCE: "And I had, uh ... uh, mentioned it to you before."

CROSS: "Yeah. All right, hold on for one minute, okay?"

JOYCE: "Okay."

(Lengthy pause)

CROSS: "Hello, Justice."

JOYCE: "Yeah."

CROSS: "Think that was, they let that one slip through, I think. That was, uh ... Trooper Vaughn was on there. State trooper?"

JOYCE: "I'm not sure, uh, yeah."

CROSS: "Michael F. Moran?"

JOYCE: "Yeah." (UI)—

CROSS: "Okay, I—think he might have find him guilty."

JOYCE: "Yeah."

CROSS: "You wanted him helped, right?"

JOYCE: "Yeah."

CROSS: "Okay. Uh—"

JOYCE: "His brother's the district justice up in Altoona."

CROSS: "Okay, there's no problem. Is— the kid's from down here?"

JOYCE: "Yeah."

CROSS: "Okay, could you reach him?"

JOYCE: "Uh, I can reach his brother. Is what I—I don't—I c—I don't—I can't reach him—"

CROSS: "All right."

JOYCE: "—but I can reach his brother, who can get a'hold of him, yeah."

CROSS: "Tell him to get a'hold of him and come in here. Uh, we'll file the post-trial motions, all right?"

JOYCE: "Okay."

CROSS: "And nobody—there's nobody here when they file post-trial motions. He has ten days from yesterday to do it."

JOYCE: "Okay."

CROSS: "So tell him to come in here, and I'll give him a copy ... how to do it, all right?"

JOYCE: "Okay."

CROSS: "And it'll take him ten minutes ... and it'll be heard in about ten, ten

days from now, it don't cost him nothin', it ... post-trials are free."

JOYCE: "Okay."

CROSS: "And then we'll, uh ... we'll handle it from there."

JOYCE: "Okay."

CROSS: "There's no problem, but make sure ya—"

JOYCE: "I'll (UI)."

CROSS: "Tell him to come down here and see me."

JOYCE: "Okay."

CROSS: "All righty?"

JOYCE: "Will do."

CROSS: "Okay, buddy."

JOYCE: "Thanks a lot. Bye."

13. This phone call was made in an effort to learn the procedure for post-trial relief so that Respondent could inform Moran's brother of the correct procedure. During the conversation it became apparent to the Respondent that he could again seek favorable treatment for Moran, and the Respondent, through his response to Mr. Cross's question, indicated that he was seeking favorable treatment. Subsequent to that day, Moran filed a motion for post-trial relief.

14. On April 6, 1993, a hearing on the motion for post-trial relief was held before Common Pleas Court Judge Raymond L. Scheib. At the conclusion of that hearing, the post-trial motions were granted, the summary appeals were sustained, and the charges were dismissed.

### 3. *PART B*

15. Marlene Wisler (Wisler) is an adult individual and a resident of Allegheny County, Pennsylvania. Commencing in approximately 1970 until her retirement in approximately December, 1992, Wisler was employed as a secretary in the office for Magisterial District 05–2–23. In this capacity, Wisler became personally acquainted with the Respondent.

16. Wisler is the mother of Deborah Wells who is an adult individual and resident of the County of Allegheny.

17. On or about the Spring of 1993, the said Deborah Wells received traffic citations from Officer Joseph Benz of the Pittsburgh City Police Department.

18. Ms. Wells pled not guilty to the said citations.

19. A hearing on these citations was scheduled for May 21, 1993 in the City Magistrate's Court for the City of Pittsburgh.

20. Prior to the date set for the hearing on the above citations, Wisler advised the Respondent that her daughter had received these citations.

21. Respondent knew District Justice Jules Melograne who, at that time, was the District Justice serving Magisterial District Number 05–2–17 and who, at various times, had served as the solicitor for the Special Court Judges Association of Allegheny County.

22. Respondent believed that Jules Melograne could, or at least would attempt to influence the outcome of various cases pending before different courts in Allegheny County, Pennsylvania.

23. On or about May 20, 1993, the Respondent placed a phone call to Jules Melograne at his magisterial district office. At that time, the Federal Bureau of Investigation was conducting an investigation of allegations concerning the Statutory Appeals Unit of Allegheny County and recorded that conversation by the use of interceptive devices and prepared a transcript of that conversation as follows:

*Incoming Call*

Unknown Female (Unfemale): "District Court."

DENNIS R. JOYCE: "Is the judge there?"

Unfemale: "Who's calling?"

JOYCE: "Judge Joyce."

Unfemale: "Hold on."

JOYCE: "Thank you."

(Pause)

JULES C. MELOGRANE: "My wife wanted to know if I was being investigation by the Justice Department."

JOYCE: (Laughs)

MELOGRANE: "I got a letter from the U.S. Marshall's Office."

JOYCE: "Uh huh."

MELOGRANE: "And she, she called me, she says . . . do you got problems? I said, hey. I'm not, ya know, I'm like anybody else, ya know. I'm not immune."

JOYCE: "Yeah."

MELOGRANE: "Ya know, and she said, from the Justice Department, U.S. Marshall's Service. I says fine, I says, open it up, ya know. Says, well, what did we do? I says, I don't know, ya know. I know what it was. We're honoring him at our Italian banquet this year. Uh, Marzullo, he's Italian."

JOYCE: "Oh, okay."

MELOGRANE: "And, uh, she got worried and that, you know?"

JOYCE: "Yeah." (Laughs)

MELOGRANE: "Yeah. What do you need, Denny?"

JOYCE: "Hey, uh . . . Marlene's daughter . . . has a hearing tomorrow in City Court."

MELOGRANE: "Yeah."

JOYCE: "And I ju—I can't get—I'm goin' on vacation this afternoon, and—"

MELOGRANE: "Why didn't you tell—why didn't you tell me originally? All right."

JOYCE: "Well, I—I was tryin' to get a'hold of Watson, or . . ."

MELOGRANE: "Well, you should have called me—"

JOYCE: "Yeah."

MELOGRANE: "—I have a relative works down there."

JOYCE: "Yeah."

MELOGRANE: "Did you know that?"

JOYCE: "No."

MELOGRANE: "Mike Acquaro."

JOYCE: "Oh, okay."

MELOGRANE: "All right, what's the girl's name?"

JOYCE: "Deborah . . ."

MELOGRANE: "Hold on. Uh . . . all right."

JOYCE: "Wells."

MELOGRANE: "W-e-l-l-s?"

JOYCE: "Yeah."

MELOGRANE: "Okay. I know he takes off Thursday afternoons, he has lunch with, uh, what's his name, uh, Bill, uh ... from the Buick company on F—West Liberty Avenue, uh ... Bill Gray."

JOYCE: "Oh, okay."

MELOGRANE: "Yeah, uh, they always have lunch at Tambellini's every Thursday."

JOYCE: "Oh."

MELOGRANE: "But I have his home number."

JOYCE: "Okay."

MELOGRANE: "And, uh ... if I don't catch Mike down there, I'll call him at home tonight."

JOYCE: "Okay."

MELOGRANE: "If not, then one of the girls down there is very close to me, Marlene Schwartz, and then one of the other girls, has a hearing in my court here from City Court." (Laughs)

JOYCE': "Oh, okay."

MELOGRANE: "We're covered all ways, aren't we?" (Laughs)

JOYCE: "Oh, yeah, yeah, yeah."

MELOGRANE: "But, I'll put the call in."

JOYCE: "Okay."

MELOGRANE: "All right?"

JOYCE: "Thanks a lot, I appreciate it."

MELOGRANE: "Oh, hey, Denny. That, uh, meeting you're havin' with Judge Zavarella. Am I supposed to come there?"

JOYCE: "Uh ..."

MELOGRANE: "That's that, uh—"

JOYCE: "I—I don't know. I just got the same notice that you did, so."

MELOGRANE: "That come in last week, the other notice—"

JOYCE: "Yeah."

MELOGRANE: "—yeah."

JOYCE: "Elaine set that up, so I—"

MELOGRANE: "Yeah."

JOYCE: "Call her and, and find out. I guess there's nobod—I—"

MELOGRANE: "I says the uh—"

JOYCE: "You're a member of the board."

MELOGRANE: "Yeah. Is that—"

JOYCE: "If you got a notice, you're supposed to be there."

MELOGRANE: "Okay. I'll be there."

JOYCE: "Okay."

MELOGRANE: "All right."

JOYCE: "Thanks a lot."

MELOGRANE: "Anytime, Denny."

JOYCE: "Okay."

MELOGRANE: "Right."

JOYCE: "Bye."

(Conversation completed)

24. Respondent placed the above phone call to Jules Melograne in an effort to obtain favorable treatment for Deborah Wells and influence the decision by the Court.

25. On or about May 21, 1993, at the time set for the hearing in City Magistrate's Court, the citations against Deborah Wells were dismissed.

## III. INTRODUCTORY SUMMARY— TERRICK, D.J.

The Judicial Conduct Board (Board) filed a Complaint with this Court against District Justice Richard James Terrick (Respondent). The Complaint consists of ten Counts based upon allegations that the Respondent improperly placed two telephone calls to influence the outcome of two cases. The first call was made on March 25, 1993 to Nunzio Melograne, an employee of the Statutory Appeals Unit of Allegheny County, and is the subject of Part A, paragraphs 4–11 of the Complaint, and Counts 1–5. The second call was made on June 15, 1993 to District Justice Jules Melograne, and is the subject of Part B, paragraphs 12–17 of the Complaint, and Counts 6–10. Counts 3 and 8 have been withdrawn by the Board.

The Board and the Respondent have submitted stipulations of fact in lieu of trial under C.J.D.R.P. No. 502(D)(1), and a waiver of trial. The Court hereby accepts those stipulations of fact in pertinent part, recited

below, as the facts necessary for disposition of this case.

## IV. FINDINGS OF FACT— TERRICK, D.J.

### 1. INTRODUCTORY

1. The Judicial Conduct Board (Board) is empowered by Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging ethical misconduct on the part of judges, justices or justices of the peace and to present the case in support of the formal charges before the Court of Judicial Discipline.

2. District Justice Richard James Terrick (Respondent) is the duly elected district justice serving Magisterial District 05–2–15. Magisterial District 05–2–15 encompasses the Boroughs of West Homestead, Homestead, and Munhall in Allegheny County.

3. Respondent commenced his judicial service on or about November, 1962. Respondent continues to serve as the district justice at the present time.

### 2. PART A

4. On or about February 16, 1993, Robert Kessler of 3006 Myer Boulevard, McKeesport, Pennsylvania, was convicted of the charge of careless driving, a violation of Vehicle Code § 3714, in Traffic Court in the City of Pittsburgh held at 100 Grant Street. Kessler had been charged by Officer Lenig of the City of Pittsburgh Police Department. A fine of $25.00 plus costs (total: $89.00) was imposed.

5. On March 2, 1993, Kessler filed an appeal to the Court of Common Pleas which was docketed to No. SA–640 of 93. The appeal was scheduled to be heard on March 29, 1993, at 9:00 a.m. in Courtroom No. 822 on the Eighth floor of the City/County Building in Pittsburgh.

6. At that time, all appeals from summary convictions in Allegheny County were heard by the Statutory Appeals Unit located in Courtroom Number 822, Eighth Floor, City/County Building, Pittsburgh, Pennsylvania 15219. At that time, Nunzio Melograne

was an employee of the Statutory Appeals Unit.

7. On or about March 25, 1993, the Respondent placed a telephone call to Nunzio Melograne regarding the appeal of Kessler. At that time, the Federal Bureau of Investigation was conducting an investigation of allegations concerning the Statutory Appeals Unit of Allegheny County and recorded that conversation by use of interceptive devices and prepared a transcript of that conversation as follows:

Nunzio Melograne: "Hello."

Richard Terrick: "Nunz."

Melograne: "Yeah."

Terrick: "Rich Terrick."

Melograne: "Yeah, how you doin?"

Terrick: "I'm terrific. Bo's out, huh?"

Melograne: "Yeah."

Terrick: "I got one Monday!"

Melograne: "Okay. Give me the SA number."

Terrick: "I—"

Melograne: "Or the name."

Terrick: "Kessler."

Melograne: "Spell it."

Terrick: "K-e-s-s-l-e-r ..."

Melograne: "J-e—uh—"

Terrick: "K. K as in, un ...katzenjammer, I guess."

Melograne: "Hold on. I might have the list on me here."

Terrick: "He's a—he's a bus driver. He need to drive for a livin'."

(Pause; background conversation non-pertinent)

Melograne: "That's Robert."

Terrick: "Kessler. Yeah."

Melograne: "Robert Kessler. Ligget got him. City Cop."

Terrick: "Yeah."

Melograne: "Okay. CAV. Okay."

Terrick: "All right?"

Melograne: "Yeah, it's on for Monday."

Terrick: "Thanks."

Melograne: "Robert Kessler. K-e-s-s-l-e-r."

Terrick: "Yeah, tell Bo that's a bus driver."

Melograne: "Okay."

Terrick: "Thanks. If ya can—"

Melograne: "Will do."

Terrick: "—'preciate it."

Melograne: "Okay."

Terrick: "Bye bye."

Melograne: "Bye."

(End transcription; following non-pertinent)

8. This telephone call was made by the Respondent in order to influence the outcome of and have a favorable impact upon Kessler's appeal, and to secure a favorable decision for him.

9. The opposing party was never advised of this conversation.

10. On March 29, 1993, Kessler was adjudged not guilty and the case was dismissed.

### 3. *PART B*

11. On January 3, 1993, Joseph Laychak of 301 Calamity Hollow Road, Finleyville, Pennsylvania, was issued a citation charging a violation of the vehicle code by Officer M.A. Farrell of the Whitehall Borough Police Department.

12. A hearing on this citation was scheduled to be held before District Justice Jules Melograne on June 29, 1993.

13. On or about June 15, 1993, the Respondent placed a telephone call to District Justice Jules Melograne regarding Laychak. At that time, the Federal Bureau of Investigation was conducting an investigation of allegations concerning District Justice Melograne and recorded that conversation by use of interceptive devices and prepared a transcript of that conversation as follows:

Melissa A. Dobroski: "District Court."

Unknown Female (Unfemale): "Hi, this is Richard Terrick's office."

Dobroski: "Hi."

Unfemale: "Hi. He wants to know if your judge is available to talk to him."

Dombroski: "Um, can you hold on a minute?"

Unfemale: "Sure."

Dombroski: "Okay."

(Pause)

Jules C. Melograne: "Hello."

Unfemale: "Hi, Judge, um . . ."

Melograne: "What do you need honey?"

Unfemale: "M—uh, Mr. Terrick will be right with you."

Melograne: "Okay."

Unfemale: "Hold on."

Melograne: "Yeah."

(Pause)

(Melograne speaks to someone while on hold, non-pertinent)

District Justice Richard Terrick: "Hello."

Melograne: "Rick?"

Terrick: "Yeah."

Melograne: "Guess what? Uh, Whitey Boehm sat in for me, he found a Federal agent guilty of a speeding violation."

Terrick: "Good."

Melograne: "The agent went—"

Terrick: "I'd love fuckin' (UI)."

Melograne: "—he—he went, uh—he went cuckoo. They tried to go to the chief, ya know, the—ya know, through the back door, the head of the FBI? And the chief says, I don't tell my officers what to do, I and then that's obstruction of justice. And, we don't tell the judge what to do with that. So you have to take it up with the officer. He says, I can't have my officer withdraw it. So Whitey was sittin' that day for me, and boy, he tore into that police—police officer and all that. And, uh—"

Terrick: "Aw, don't you just love him?"

Melograne: "—he went down the drain!"

Terrick: "Uh, don't you just love Whitey?"

Melograne: "Oh, yeah!"

Terrick: "I just love him."

Melograne: (Laughs)

Terrick: "I'd love to have—I'd love to have some squares like he got."

Melograne: "Oh—"

Terrick: "No shit. (UI)—"

Melograne: "Sometimes I wonder if it was a sting operation maybe, you know."

Terrick: "Hey. Who gives a fuck!"

Melograne: "Yeah."

Terrick: "They put fifty-fi—they put, uh, what? Forty-five of our guys outta business."

Melograne: "Right, they did."

Terrick: "(UI)"

Melograne: "And that was a political thing, too."

Terrick: "No question!"

Melograne: "Sure."

Terrick: "How did they, Thornburgh—Thornburgh got to be an assistant attorney gen—uh, attorney general of the United States over that shit!"

Melograne: "Yeah. That's true. What do you need?"

Terrick: "One you missed."

Melograne: "Uh-oh."

Terrick: "Laychak. L-a-y-c-h-a-k. It—"

Melograne: "What—what do you mean, I missed it!"

Terrick: "He was found guilty."

Melograne: "Well, your name wasn't on it, though."

Terrick: "Yeah."

Melograne: "You sure!"

Terrick: "Positive. I asked him to appeal it, he didn't wanna appeal it, so. He got fined a hundred dollars for permitting a violation. He ... was selling this kid a car, and the kid took the car to test it out and got picked up for an expired inspection."

Melograne: "Oh yeah, yeah, right. Yeah, yeah, I remember that."

Terrick: "And he just wanted us to—"

Melograne: "Hey. Rick—"

Terrick: "He didn't want us to—"

Melograne: "—you—honest to God, you name wasn't on it."

Terrick: "It was on him and the other kid. You let the other kid go."

Melograne: "Might have been on the other, not on this one, though. You know what I'm sayin'?"

Terrick: "He got another one comin' up on the 29th. I don't know if it was the same thing."

Melograne: "Same kid?"

Terrick: "Laychak, yeah. He—you know, he said, I have a hearing scheduled on the 29th out in front of Judge Melograne."

Melograne: "Uh—uh, you mean he has another one?"

Terrick: "I don't know what the other thing's about."

Melograne: "Uh, hold on a minute."

Terrick: "It's—I'll give ya the number."

Melograne: "What—"

Terrick: "Thirty-four ninety-three."

Melograne: "Thirty—"

Terrick: "There's five zeros in front—"

Melograne: "Yeah."

Terrick: "—thirty-four ninety-three's the docket."

Melograne: "All right, hold on. Laychak?"

Terrick: "Yeah, just look at it, I—"

Melograne: "All right. Hold on."

(Pause)

(Non-pertinent conversation heard during pause)

Melograne: "Yeah, I have your name on this one, uh ..."

Terrick: "All right."

Melograne: "Yeah. That's Joseph Laychak, Calamity Hollow Road, Finleyville."

Terrick: "(UI)"

Melograne: "Owner did permitfully watch and operate his vehicle with expired registration."

Terrick: "This kid."

Melograne: "Yeah. I'll take care of this. All right. I—"

Terrick: "(UI)"

Melograne: "—I have your name, but it wasn't on the other one, Rick."

Terrick: "Aw, well ..."

Melograne: "Yeah."

Terrick: "Maybe it was my fuck-up."

Melograne: "Yeah."

Terrick: "They got—I got competition in the fall, you know."

Melograne: "Ya do? You mean the Republican ticket?"

Terrick: "Yeah. He won by forty on our side. I was filed both ways."

Melograne: "Yeah."

Terrick: "I expected to get the Republican, but. . .we didn't get no voters out. Son of a bitchin' voters weren't comin' out!"

Melograne: "Um um."

Terrick: "Oh, we don't, uh . . . But, I got him by eight hundred in the primary. He's got a big—thing to overcome. 'Cause we got a little more straight Ds in the fall."

Melograne: "Right."

Terrick: "But I'm not goin' to sleep on it."

Melograne: "Right. All right, if you need something, I am here."

Terrick: "I have—you know, 25 percent of the magistrates in the state lost, you know."

Melograne: "Yeah? Because they did their homework, Rick."

Terrick: "Barkman."

Melograne: "They don't do their homework, Rich, and uh . . . you know, that—uh, nobody would oppose me in the last four times? And both parties endorsed me?"

(Minimized)

Terrick: "The Chamber of Commerce down here, and ya got the newspaper, and ya got the—"

14. This telephone call was made by the Respondent in order to influence the outcome and have a favorable impact upon Laychak's appeal and to secure a decision favorable to him. Laychak was found "not guilty" by District Justice Jules Melograne and the citation was dismissed.

15. The opposing party was never advised of this conversation.

1. As mentioned, the Board withdrew Counts 3 and 8 against both Respondents.

2. The same Walter "Bo" Cross called by Respondent, Joyce.

## V. DISCUSSION—JOYCE, D.J. and TERRICK, D.J.

### PART A and PART B—JOYCE, D.J. and TERRICK, D.J.

The Board has charged that the conduct of the Respondents set out in PART A and PART B of the Complaints filed against these Respondents subjects them to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution because that conduct constitutes:

1. such that brings the judicial office into disrepute (Counts 1 and 6),
2. such that prejudices the proper administration of justice (Counts 2 and 7),
3. a violation of Rule 2A of the Rules Governing Standards of Conduct for District Justices (Counts 4 and 9), and
4. a violation of Article V, § 17(b) of the Pennsylvania Constitution by virtue of his violation of Rule 2A of the Rules Governing Standards of Conduct for District Justices (Counts 5 and 10).[1]

We will address these eight Counts in the order in which the Board has recited them. In so doing we will refer to our recent Opinion in *In re Trkula*, 699 A.2d 3 (Pa.Ct.Jud. Disc.1997), which provides considerable guidance.

In *Trkula*, the Respondent had made a telephone call to Walter "Bo" Cross [2] to influence the outcome of a case then pending in court. This Court held that said conduct constituted:

1. such that brings the judicial office into disrepute,
2. such that prejudices the proper administration of justice, and
3. a violation of Rule 2A of the Rules Governing Standards of Conduct for District Justices.[3]

In the cases now before us, the Respondents have stipulated that they engaged in conduct identical to Trkula's.[4] The charges

3. Trkula was not charged with a violation of Article V, § 17(b) of the Constitution as these Respondents have been.

4. Trkula made the call to influence the outcome *against* the defendant, whereas Respondents'

contained in Counts 1, 6, 2, 7, 4 and 9 are identical to the charges 1, 2, 3 above which this Court held had been established in *Trkula*. In dealing with these charges, we adhere to our conclusions in *Trkula* as well as to our reasoning.

**COUNTS 1 AND 6.** Conduct which brings the judicial office into disrepute.

We adopt the Opinion of this Court in *In re Trkula*, 699 A.2d at 7–8 and reiterate the references we there made:

(1) to *In re Cicchetti*, 697 A.2d 297 (Pa. Ct.Jud.Disc.1997) where we noted that:

The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*Id.* at 312, and

(2) to *In re Smith*, 687 A.2d 1229 (Pa.Ct. Jud.Disc.1996) where we said that:

"Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

*Id.* at 1239.

In *Trkula* we observed that:

Certainly the reasonable expectations of the public would include the expectation that a judicial officer will not make an overt, *ex parte* attempt to influence the outcome of a case on appeal from his or her court, to the detriment of the appellant.

■ We now refine that observation to reflect what we hold to be self-evident: certainly the reasonable expectations of the public would include the expectation that a judicial officer will not make an overt, *ex parte* attempt to influence the outcome of any case, to the detriment of any party. As in *Trkula*, it would be difficult to identify conduct which would more assuredly dash public confidence in our judicial system and the judicial office itself. Consequently, we conclude that the conduct of Respondents was such as to bring the judicial office into disrepute.

*COUNTS 2 AND 7.* Conduct which prejudices the proper administration of justice.

This Court held in *In re Smith, supra*, at 1237, that:

Conduct which prejudices the proper administration of justice ... is conduct which obstructs or interferes with those activities which enable the systematic operation of the courts. The term "systematic operation" encompasses not only the procedures adopted by the courts which aid in functioning, but also the standards of conduct expected of judicial officers in the performance of the work of the courts. Hence, when a judicial officer's conduct departs from the standard expected of judges and has the effect of obstructing or interfering with the systematic operation or normal functions of the court, his conduct *will have affected* the proper administration of the courts.

■ It is certainly without question that when Respondents called District Justice Melograne and employees of the Statutory Appeals Unit about cases then pending in that court they were "interfering with the systematic operation or normal functions of the court;" and, as we said in *Smith*, "[such] conduct will have affected the proper administration of the courts." *See, Trkula, supra*, at 8.

Again, in *Trkula* we quoted from our Opinion in *Smith*, where we said:

A judicial officer who engages in conduct which prejudices the proper administration of justice would have the added element of a mental state in which he or she not only knew that the conduct at issue consisted of some neglect or impropriety, *but also acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice, for example, by affecting a specific outcome.*

*Trkula, supra*, at 8; *Smith, supra*, at 1238.

Review of the transcripts of the telephone conversation Joyce had on March 23, 1993 with Walter "Bo" Cross, Supervisor of the Statutory Appeals Unit regarding the Moran

calls were made to influence the outcome *in*        *favor* of the defendant.

case (Stipulated Finding of Fact 12) and the telephone conversation he had on May 20, 1993 with District Justice Jules Melograne regarding the Wells case (Stipulated Finding of Fact 23) and the telephone conversation Terrick had on March 25, 1993 with Nunzio Melograne regarding the Kessler case (Stipulated Finding of Fact 7) and the telephone conversation he had on June 15, 1993 with District Justice Jules Melograne regarding the Laychak case (Stipulated Finding of Fact 13) reveals that, in placing the calls, Respondents had no other purpose than to "[affect] a specific outcome" and that, in placing the calls, they "acted with the knowledge and intent that the conduct would have a deleterious effect upon the administration of justice." *In re Trkula, supra,* at 8.

***COUNTS 4 AND 9.*** Violation of Rule 2A of the Rules Governing the Standards of Conduct for District Justices.

Rule 2A of the Rules Governing the Standards of Conduct for District Justices provides:

> A. A district justice shall respect and comply with the law and shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. A district justice shall not allow his family, social or other relationships to influence his judicial conduct or judgment. He shall not lend the prestige of his office to advance the private interest of others, nor shall he convey or permit others to convey the impression that they are in a special position to influence him.

■ For the reasons set forth in this Court's Opinion in *In re Trkula, supra,* at 9–10 we find that in making the telephone calls set out in Stipulated Findings of Fact 12 and 23 (Joyce) and Stipulated Findings of Fact 7 and 13 (Terrick) Respondents engaged in conduct in violation of Rule 2A of the Rules Governing Standards of Conduct for District Justices.

***COUNTS 5 AND 10.*** Conduct in violation of Article V, § 17(b) of the Pennsylvania Constitution by virtue of engaging in conduct violative of a canon of legal or judicial ethics prescribed by the Supreme Court, to wit,

Rule 2A of the Rules Governing Standards of Conduct for District Justices.

Section 17(b) of Article V of the Pennsylvania Constitution provides:

> Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

In the section, justices of the peace (now known as District Justices) are treated separately from justices and judges, for a reason no more complicated than that justices of the peace are governed by a separate and different Code of Conduct than the Code of Judicial Conduct which applies to justices and judges.

We make two conclusions regarding the application of Article V, § 17(b) of the Constitution:

■ 1. Violation of a canon of legal or judicial ethics by a justice or judge is a violation of § 17(b) of the Constitution. Section 17(b) by its terms makes a violation of a canon a violation of § 17(b). Violation of the latter is thus derivative and automatic.

■ 2. Though the sentence referring to justices of the peace says they "shall be governed by [The Rules Governing Standards of Conduct for District Justices]" but does not specifically say "shall not violate [those Rules]," in the context of § 17(b) the phrases mean the same, and the inclusion of the second sentence was intended to make a violation of the District Justices' Code a violation of the Constitution just as a violation of the Judicial Code is made a violation of the Constitution by the first sentence. Otherwise, there was no purpose in including the second sentence and its injunction would have no meaning or application—a violation of elementary principles of statutory interpretation. *See,* 1 Pa.C.S. § 1921, *Habecker v. Nationwide Ins. Co.,* 299 Pa.Super. 463, 445 A.2d 1222 (1982) and cases cited therein. Thus, a violation of the Rules Governing Standards of Conduct for District Justices is

an automatic, derivative violation of § 17(b) of the Constitution.

## VI. CONCLUSIONS OF LAW—JOYCE, D.J.

### PART A AND PART B

1. The Respondent's conduct in contacting the Supervisor of the Allegheny Statutory Appeals Unit in the Moran case and in contacting District Justice Melograne in the Wells case constitutes:

   a. such that brings the judicial office into disrepute,

   b. such that prejudices the proper administration of justice,

   c. a violation of Rule 2A of the Rules Governing Standards of Conduct for District Justices, and

   d. a violation of Article V, § 17(b) of the Pennsylvania Constitution.

2. The Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

## VII. CONCLUSIONS OF LAW—TERRICK, D.J.

### PART A AND PART B

1. The Respondent's conduct in contacting an employee of the Statutory Appeals Unit of Allegheny County in the Kessler case and in contacting District Justice Melograne in the Laychak case constitutes:

   e. such that brings the judicial office into disrepute,

   f. such that prejudices the proper administration of justice,

   g. a violation of Rule 2A of the Rules Governing Standards of Conduct for District Justices, and

   h. a violation of Article V, § 17(b) of the Pennsylvania Constitution.

2. The Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

In re Dennis Robert Joyce,
District Justice In and For
Magisterial District 05–2–23.

No. 2 JD 97.

### ORDER

AND NOW, this 18th day of February, 1998, based upon the Conclusions of Law, it is hereby ORDERED:

That, pursuant to C.J.D.R.P. No.–503, the attached Opinion with Stipulations of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent.

That, either party may file written objections to the Court's Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party.

That, in the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and issue an Order setting a date for such oral argument, and

That, in the event objections are not filed, the Conclusions of Law shall become final, and this Court will issue an Order setting a date, pursuant to C.J.D.R.P. No. 504, for a hearing on the issue of sanctions.

In re Terrick,
District Justice In and For
Magisterial District 05–2–15.

No. 3 JD 97.

### ORDER

AND NOW, this 18th day of February, 1998, based upon the Conclusions of Law, it is hereby ORDERED:

That, pursuant to C.J.D.R.P. No.–503, the attached Opinion with Stipulations of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent.

That, either party may file written objections to the Court's Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party.

That, in the event that such objections are filed, the Court shall determine whether to

entertain oral argument upon the objections, and issue an Order setting a date for such oral argument, and

That, in the event objections are not filed, the Conclusions of Law shall become final, and this Court will issue an Order setting a date, pursuant to C.J.D.R.P. No. 504, for a hearing on the issue of sanctions.

MAGARO, J., files a Concurring and Dissenting Statement in which SYLVESTER, J., joins.

MAGARO, Judge, concurring and dissenting:

I join in the Opinion of the Court in all respects except for that portion which finds that Respondents violated Article V, § 17(b) of the Pennsylvania Constitution, from which portion I dissent.

I dissent because, although the conduct of these Respondents is substantively identical to the conduct of the Respondent in *In re Trkula*, the latter was not charged with a violation of Article V, § 17(b) of the Pennsylvania Constitution whereas these Respondents have been. I believe that the interests of justice and predictability are ill served if this Court cannot be relied upon to find that conduct by one Respondent constitutes the same constitutional and canonical violations as the same conduct by another. Nor do I believe that this Court's responsibility in this regard should depend on what the Board decides to put in a Complaint in any given case. That is not to say that there is any indication that the Board, in bringing the charges against District Justices Joyce and Terrick, intended to treat them in a discriminatory fashion compared with District Justice Trkula. However, for the purpose of enlightening other judicial officers as to what conduct may support the imposition of sanctions and the basis therefor, this Court should be consistent.

SYLVESTER, J., joins in this Concurring and Dissenting Statement.