## National Fuel Gas Supply Corporation v. Kovalchick Corporation

C.P. of Jefferson County, nos. 202-2004 CD, 203-2004 CD, 204-2004 CD, 312-2004.

*J. Lauson Cashdollar,* for plaintiff.
*Gregg M. Rosen,* for defendant.

FORADORA, *P.J.,* September 15, 2005—

## INTRODUCTION AND PROCEDURAL HISTORY

Before this court is a matter of first impression in Pennsylvania—whether a for-profit corporation operating natural gas lines has the power under 15 Pa.C.S. §1511 to condemn privately owned property for its gathering lines.

National Fuel Gas Supply and Kovalchick Corporation seek a judgment concerning whether National has the power to condemn portions of Kovalchick's property which support three of National's pipelines. Originally, National filed three applications for approval of bond under the authority of 15 Pa.C.S. §§1103 and 1511 to perfect the condemnation of three natural gas pipeline rights-of-way across strips of land owned by Kovalchick. Kovalchick challenged National's condemnation authority in an equity action. This court consolidated the three applications with the equity action and conducted a non-jury trial. Now, after careful consideration of the evidence and the parties' briefs, the court will enter judgment in favor of National, who possesses and may exercise condemnation powers with regard to the rights-of-way supporting lines G-102, G-110, and FM-100.

## FACTUAL FINDINGS

Kovalchick, a private, family-owned business, owns a strip of land formerly owned by the Pittsburgh & Shawmut Railroad Company (P&S Railroad) and located in Warsaw, Pinecreek, and Snyder Townships in Jefferson County, Pennsylvania. P&S Railroad completed the following grants of license and right-of-way agreements: (1) to Jackson Vitrified China Company on August 1, 1929, for constructing, operating, and maintaining a four-

inch natural gas pipeline under and through P&S Railroad property in Warsaw Township; (2) to Lee B. Humphrey t/d/a Humphrey Brick & Tile on November 20, 1931, for constructing, operating and maintaining a six-inch natural gas pipeline under and through P&S Railroad property in Pinecreek Township; (3) and to United Natural Gas Company on September 15, 1953, for constructing, operating and maintaining a 12-inch natural gas pipeline under and through P&S Railroad property in Snyder Township. National is the undisputed successor-in-interest to each of those licenses and rights-of-way.

National is a local producer primarily engaged in exploring, drilling and producing local natural gas. The corporation gathers, stores, transmits and transports natural gas through its 2,910 miles of pipeline extending from the Canadian gateway at Niagara, south to the Ellisburg-Leidy hub, and west to the Appalachian Basin. Three of those lines are currently in dispute for purposes of this consolidated action: G-102; G-110; and FM-100. Lines G-102 and G-110 are located entirely within the borders of Jefferson County and are used to receive and gather gas from local producers in Jefferson County. National transports the gas from lines G-102 and G-110 on behalf of shippers to delivery points in New York and Pennsylvania and utilizes those lines to deliver gas to local distributor National Fuel Gas Distribution Corporation for sale to retail customers. Through lines G-102 and G-110, National services 123 customers, including the local airport. Whereas G-102 and G-110 function as gathering lines, however, line FM-100 is an interstate transmission line. National also owns or co-owns 32 underground natural storage areas.

National possesses a certificate of public convenience and necessity from the Federal Energy Regulatory Commission (FERC). The FERC regulates National as a public utility involved in the gathering, storage and interstate transportation of natural gas.[1] The FERC regulates the construction, acquisition, operation and abandonment of National's facilities in the interstate transportation of gas, as well as the provisions, rates, terms and abandonment of National's interstate transportation services. Gathering lines G-102 and G-110 are exempt from regulation under the Natural Gas Act (NGA),[2] and thus are not subject to the FERC's requirements concerning the acquisition, construction, operation and abandonment of facilities. Nonetheless, because both lines provide transportation services associated with interstate commerce, all of National's transportation obligations through them—rates, terms, and conditions of service—are governed by FERC regulations.[3] National must, for instance, provide non-discriminatory access through lines G-102 and G-110 and, absent the consent of affected shippers, receive FERC authorization before removing firm gas receipt and delivery points from its service agreements.

Unlike G-102 and G-110, interstate transmission line FM-100 is encompassed within National's certificates of public necessity and convenience, is fully regulated

---

1. The FERC has jurisdiction over National under the Natural Gas Act, 15 U.S.C. §§717-717W.

2. 15 U.S.C. §717(b).

3. *Northern Natural Gas Co. v. FERC,* 929 F.2d 1261 (8th Cir. 1991), *cert. denied,* 502 U.S. 856 (1991) (articulating that where the gathering activities relate to the transportation and sale of natural gas in interstate commerce, even gathering facilities otherwise unregulated by the FERC are subject to its rate and quality of service jurisdiction).

by the FERC in all respects, and thus constitutes a "jurisdictional facility" controlled by the FERC under its general jurisdiction.

## DISCUSSION

15 Pa.C.S. §1511 reads, in pertinent part, as follows:

"*(a) General rule.*—A public utility corporation shall, in addition to any other power of eminent domain conferred by any other statute, have the right to take, occupy and condemn property for one or more of the following principle purposes and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principle purposes: . . .

"(3) the production, generation, manufacture, transmission, storage, distribution or furnishing of natural gas . . . to or for the public." *Id.*

A public utility corporation is defined by statute as any foreign or domestic corporation for profit that is subject to regulation by either the Pennsylvania Utility Commission or an officer or agency of the United States. Section 1103.

Under Pennsylvania law, courts must read unambiguous statutes "[according to] their plain meaning and common usage," *Nott v. Aetna U.S. Healthcare,* 68 D.&C.4th 495, 503 (2004), and give effect to that plain meaning. *Erdely v. Hinchcliffe and Keener Inc.,* 875 A.2d 1078, 1085 (Pa. Super. 2005). Section 1511 is unambiguous; it plainly states that a public utility corporation may condemn property for any or all of the purposes listed in subsection (a)(3). The list appears to be comprehensive, especially when considered with its natural inferences. Though the word "gathering" does not specifically ap-

pear, National could neither store nor distribute natural gas without first gathering it. Even absent that inference, however, section 1511 specifies that condemnation is available both for the purposes enumerated in the statute *and* for ancillary purposes reasonably necessary or appropriate to accomplish the enumerated purposes. Gathering doubtless constitutes such an ancillary purpose and is thus encompassed within the statute.

Equally clear is National's status as a public utility corporation under section 1103. National operates as a for-profit corporation engaged in the international transportation of natural gas. As such, National is necessarily subject to NGA requirements and consequent regulation by the FERC—an agency of the United States. This includes the regulation of certain aspects of gathering activities relating to the interstate transportation of natural gas. *Northern Natural Gas Co. v. FERC,* 929 F.2d 1261 (8th Cir. 1991), *cert denied,* 502 U.S. 856 (1991). The FERC need not regulate every aspect of National's facilities before it can qualify to condemn property under 15 Pa.C.S. §1511. The statute imposes no such restriction, but only requires regulation of *the corporation.* Thus, that the FERC regulates only transportation obligations through G-102 and G-110, but not the physical lines, does not affect National's status as a public utility corporation, as National *is* regulated as a corporate entity by the FERC.

Nor is it inconsistent to conclude that section 1511 grants National the authority to condemn Kovalchick's property even though National admittedly could not exercise eminent domain under either PUC or FERC authority for lines G-102 and G-110. Rather, section 1511 specifies that the conferred condemnation power is "in

addition to any other power of eminent domain conferred by any other statute." The plain language of the statute thus encompasses the situation now before this court and authorizes public utility corporations operating "to or for the public" to exercise condemnation powers in certain circumstances when eminent domain is otherwise unavailable.

Because National is considered a public utility by the FERC, its lack of a PUC certificate of public convenience makes no difference. Without exception, federal law supersedes state law when the two conflict. U.S. Constitution Article VI. The FERC, as the regulatory agency enforcing the provisions of the NGA—a law of the United States—operates under the authority of the United States. Notwithstanding a contrary conclusion under the PUC, therefore, the FERC's conclusion that National constitutes a public utility controls. The United States Supreme Court confirmed in *PUC v. National Fuel Gas Co.,* 317 U.S. 456 (1943), that "Congress by [the National Gas] Act . . . preempted the regulatory powers over [matters related to] the transportation and sale of natural gas in interstate commerce." *Id.* at 466. According to the court, that included the sale of natural gas for resale for ultimate public consumption and natural gas companies engaged in those sales. *Id.* at 466-67. While the court continued to say that local matters would be left to state regulatory bodies, *id.* at 467, all three of the pipelines in question operate to ultimately facilitate interstate transmission. FM-100 is, without more, an interstate transmission line and is, thus, unquestionably outside the scope of local control. Moreover, G-102 and G-110 function to gather natural gas for distribution in interstate commerce. Consequently, even considering the disputed pipe-

lines separately, National need not satisfy the PUC's requirements to be deemed a public utility empowered to exercise eminent domain and/or condemnation powers so long as it constitutes a "public utility corporation" as defined by 15 Pa.C.S. §1103 and utilized in section 1511.[4]

Kovalchick also cannot avoid recognizing National as a public utility corporation by claiming that National does not supply natural gas "to or for the public," as National's regular activities directly refute that contention. Not only does National occasionally supply directly to individual end-users, but it consistently supplies natural gas to other corporations, who then transmit their supply to individual end-users.

As the parties remind this court, a statute must be construed so as to give meaning to every word, and "[t]he legislature is presumed to have intended to avoid mere surplusage in the words, sentences and provisions of its laws." *Habecker v. Nationwide Insurance Co.,* 299 Pa. Super. 463, 471, 445 A.2d 1222, 1226 (1982). The only reasonable conclusion to reach, therefore, is that the "or" in the disputed phrase "to or for the public" means that "to . . . the public" and "for . . . the public" encompass different actions. According to Webster's Third New In-

---

4. As stated above, the position of this court is that 15 Pa.C.S. §§1103 and 1511 address public utility corporations as entire entities and ask whether the *corporations* are regulated by an agency of the United States. Nonetheless, the same result occurs even when reading the statute to require that each facility for which the corporation seeks to exercise condemnation powers must be so regulated, as each of the disputed pipelines—G-102, G-110, and FM-100—is regulated by the FERC, FM-100 completely and G-102 and G-110 insofar as their purpose is ultimately to facilitate the interstate transmission of natural gas.

ternational Dictionary, 2401 (1961), "to" signifies a spatial relationship indicating movement toward, while "for" functions as a preparatory word indicating an intermediate step. *Id.* at 886.

Applying the "to/for" distinction so as to effectuate every word of the statute, then, reveals that while the "to . . . the public" language of section 1103 means that the condemnation power is available for public utility corporations supplying natural gas directly to individual end-users, its "for . . . the public" corollary means that the power is also available to corporations like National when they engage in the intermediate step of selling natural gas to other pipelines for resale directly to individual end-users. Through lines G-102, G-110, and FM-100, therefore, National clearly supplies natural gas "to or for the public."

## CONCLUSION

Natural gas is an important commodity without which many industries and homes could not operate in modern society. When a corporation provides the natural gas to operate those facilities, that corporation thereby provides a public utility. As a FERC-regulated corporation providing natural gas "to or for the public" through *all* of its pipelines, National satisfies the 15 Pa.C.S. §§1103 and 1511 requirements for a public utility corporation. Consequently, National enjoys the power under section 1511 to condemn Kovalchick's property insofar as it is necessary to accomplish National's purposes as a public utility. Therefore, Kovalchick's claim must fail as cutting against the plain meaning and purpose of that statute, and National may condemn the Kovalchick property sup-

porting lines G-102, G-110, and FM-100 in order to better serve the public.

Therefore, this court now decrees the following:

## ORDER

And now, September 15, 2005, after careful consideration of the above-mentioned facts and law, this court hereby orders and decrees the following:

(1) Kovalchick's request for injunctive relief is hereby denied.

(2) National's applications are hereby granted.

(3) National is hereby authorized to condemn the Kovalchick property supporting lines G-102, G-110, and FM-100.