**In re David Paul MILLER, District Justice In and For Magisterial District 02–1–02.**

**No. 3 JD 99.**

Court of Judicial Discipline of Pennsylvania.

Sept. 26, 2000.

---

BEFORE: PANELLA, President Judge, SYLVESTER, SWEENEY, BYER, RUSSO, SPOSATO and LEADBETTER, JJ.

SWEENEY, Judge.

## I. INTRODUCTION

Before the Court is the Omnibus Motion of the Respondent district justice to dismiss the Complaint in which he is charged with disseminating information in the course of his campaign for election as judge of the Court of Common Pleas of Lancaster County which, allegedly, misrepresented his position and qualifications in violation of Canon 7 of the Code of Judicial Conduct.

In his Motion, Respondent advances three reasons for dismissal asserting:

1. This Court does not have jurisdiction,

2. Canon 7 is an unconstitutional regulation of speech, and

3. The cited campaign materials contain no misrepresentations.

We hold this Court does have jurisdiction; we do not reach the constitutional question; we hold that the cited campaign materials contain no misrepresentations, and dismiss the Complaint.

## II. DISCUSSION

A. *Jurisdiction.*

1. Jurisdiction over district justices is conferred on this Court by the Constitution of Pennsylvania:

A justice, judge or justice of the peace,[1] shall be subject to disciplinary action pursuant to this section as follows:

(1) A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for conviction of a felony; violation of section 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court.

Pa. Const., Article V, § 18(d)(1).

■■■ Thus is the jurisdiction of this Court over this Respondent derived. Nor is it an obscure nuance that this jurisdiction is not limited to the Respondent's conduct "as a district justice," as the Respondent asserts—whatever that might mean on any given day to any given observer. This Court's jurisdiction over the conduct of district justices is not limited to "on-bench" or "in-office" conduct, but extends to "off-bench" conduct as well—indeed, to *any* conduct in which an individual engages while holding the office of district justice. This includes, for example, operating illegal video-poker games, *In re Chesna,* 659 A.2d 1091 (Pa.Ct.Jud.Disc. 1995); sexual harassment, perjury, violation of the election laws or of an Order of the Supreme Court, *In re Cicchetti,* 697 A.2d 297 (Pa.Ct.Jud.Disc.1997), *aff'd,* 560 Pa. 183, 743 A.2d 431 (2000); operating a motor vehicle while under the influence of alcohol, *In re Walters,* 697 A.2d 320 (Pa.Ct. Jud.Disc.1997). It is no less within the jurisdiction of this Court to impose discipline for the conduct of a district justice which occurs during a political campaign if warranted under the Constitution, i.e., if the conduct qualifies as any of the enumer-

---

**1.** The reference to "justice of the peace" is deemed a reference to a "district justice" pursuant to 42 P.S. § 2003(d).

ated proscriptions, including conduct which is "prohibited by law" or "conduct in violation of a canon or rule prescribed by the Supreme Court." *See, e.g., In re Cicchetti, supra.*

■ Respondent suggests there is an additional obstruction to this Court's exercise of jurisdiction in this case over an *unsuccessful* "candidate," and points out that the conduct of an unsuccessful lawyer—candidate would be subject to review by the Disciplinary Board of the Supreme Court, whereas, the conduct of an unsuccessful district justice—candidate would be subject to review by this Court—a state of affairs he apparently finds undesirable. This, however, does no damage to our sense of logic or legality. We point out that the same state of affairs will exist in the case of an unsuccessful judge-candidate whose campaign conduct will unquestionably be reviewed by this Court, not by the Disciplinary Board, while the conduct of his lawyer-opponent would be reviewed by the Disciplinary Board. There is nothing illogical or illegal about this division of review. Furthermore, we believe the case of *Office of Disciplinary Counsel v. Anonymous Attorneys,* 528 Pa. 83, 595 A.2d 42 (1991) makes clear that the Disciplinary Board has no role in the discipline of judicial officers and that jurisdiction over a "justice, judge, or justice of the peace" rests in this Court for any conduct occurring during his or her tenure in that office, including even their fitness to practice law.

Thus, the question of this Court's jurisdiction in this case is easily settled and no more need be said about it. However, the Respondent's contention that this Court lacks jurisdiction is based on a series of fallacious premises which may introduce some confusion on the question, so we will address them.

First, it is necessary to set out the canonical and constitutional provisions which Respondent is accused of violating.

Canon 7 of the Code of Judicial Conduct provides in relevant part:

A candidate ... for a judicial office that is filled ... by public election between competing candidates ... should not ... misrepresent his identity, qualifications, present position, or other fact.

Section 17(b) of Article V of the Pennsylvania Constitution provides:

(b) Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

Respondent contends that Canon 7 of the Code of Judicial Conduct, under which the Respondent stands charged, does not apply to district justices and, therefore, this Court lacks jurisdiction. This is not a jurisdictional question. Although there may be a question in this case—or in any case—as to whether a particular canon, or law, applies to particular conduct, that does not bring the jurisdiction of this Court into question. It is not uncommon for this Court to be called upon to determine the applicability of a canon, or a rule, or a law, or a Supreme Court Order.[2] It is our regular undertaking to determine the applicability of any canon or rule or constitutional proscription (such as conduct which brings the judicial office into disrepute) to the conduct involved in any particular case; but this is not a jurisdictional exercise. So, here, we must address the applicability of Canon 7 to the conduct of this district justice; and if we find it does not apply, that would ordinarily call for dismissal of the Complaint inasmuch as

2. *See, e.g., In re Cicchetti, supra,* at 315–18 where this Court determined the applicability of the Crimes Code offense of perjury as opposed to the Election Code offense of filing a false expense account, and at 314–15 where

we were required to determine the applicability of an Order of the Supreme Court prohibiting the use of court employees in partisan political campaigns.

Respondent has not been charged with any other violation;[3] but this would not be for lack of jurisdiction. In any event, we hold that Canon 7 of the Code of Judicial Conduct does apply in this case.

## 2. Applicability of Canon 7 of the Code of Judicial Conduct.

We discuss this subject in this section of this opinion not because it has anything to do with jurisdiction but simply because Respondent raises it in that portion of his motion.

(a) First we point out that in Rule 15 of the Rules Governing Standards of Conduct of District Justices the Supreme Court deals with the campaign conduct of district justices using the same language as Canon 7. Rule 15 provides in pertinent part:

D.   With respect to his campaign conduct, a district justice ... shall:

(3) not ... misrepresent his identity, qualifications, present position, or other fact.

It is, thus, not open to question that this prohibition applies to district justices in *any* campaign, whether it be for reelection as district justice, or for the office of Common Pleas judge.

█   It happens, however, that the Supreme Court has considered it appropriate, in promulgating the Code of Judicial Conduct, to make Canon 7 of that Code specifically applicable to "candidates" for judicial office. In light of this, and following the long recognized precept that where two laws or regulations proscribe the same conduct and one is more specifically designed to cover the situation than the other, the former will be given application,[4] we hold that Canon 7 provides the pertinent governance of Respondent's conduct in his campaign for judicial office and agree with the Board's decision to charge

Respondent under that Canon, rather than under Rule 15.

(b) We note here that if, for some reason, this Court found that Canon 7 did not apply, we would not hesitate to find a violation of Rule 15 if warranted by the facts—even though Respondent has not been charged with a violation of that Rule. This is fully supported by the Supreme Court of Pennsylvania in its decisions in *Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988) and in *Matter of Cunningham*, 517 Pa. 417, 538 A.2d 473 (1988). In *Glancey*, the Supreme Court said:

Nor do we find merit in respondent's contention that our finding his conduct violative of section 17(c), for which he has not been charged, would contradict basic notions of due process.

518 Pa. at 285, 542 A.2d at 1355. In that case the Court pointed out that "Judge Glancey was fully apprised of what conduct had precipitated disciplinary action against him." *Id.*, n. 9.

█   In this case it is even easier to justify such action for, not only would we be considering whether identical conduct constituted a violation of Rule 15, the language of Rule 15 is the same as that of Canon 7.

(c) The Respondent argues that Canon 7 does not apply because of a comment contained in the "Comments" appended at the end of the Code of Judicial Conduct. The comment referred to is:

This Code shall not apply to justices of the peace [5] ....

The answer to this is quite simple: nothing in a "Comment" can change what is clearly stated in the text of a statute, rule, or canon. The *Supreme Court* provided that Canon 7 shall apply to "candidates" for

---

**3.**   But not in this case, see *infra.*

**4.**   *See, e.g., In re Cicchetti, supra,* at 316–17 and *Commonwealth v. Bidner,* 282 Pa.Super. 100, 422 A.2d 847 (1980).

**5.**   See n. 1, *supra.*

judicial office.[6] The plain language of the Canon cannot be changed by a "Comment." If it was the Supreme Court's intention to change the text of the Canon from "A candidate for judicial office . . ." to "A candidate for judicial office, except a district justice who is a candidate for judicial office . . .," it could have done so; it did not. We are not disposed to give effect to an exception carved out of the word "candidate" which is contained only in a Comment, when the text provides for no exceptions.

Moreover, we do not believe the commentator intended his comment to have the effect on the Canon ascribed by Respondent (even if he thought it could). It is our belief that the comment, viewed in context, is simply a reminder that there is a separate set of Rules for district justices and was not intended to suggest that the pointed extension of the Canon to cover "candidates" for judicial office did not cover district justices who were "candidates" for judicial office.

In addition, we find further support for our application of Canon 7 in this case in the language of Section 17(b) of Article V of the Constitution which provides:

[J]ustices of the peace shall be governed by rules *or canons* which shall be prescribed by the Supreme Court. (Emphasis added.)

To adopt the comment on its face, then, that "This Code [the Canons] shall not apply to justices of the peace" would require the concomitant divestiture of any meaning of the words of the Constitution: "or canons," which would contravene basic canons of statutory construction. *See*, 1 Pa.C.S.A. § 1921, *Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 471, 445 A.2d 1222, 1226 (1982), *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979).

Consequently, we hold that this Court has jurisdiction, and that Canon 7 of the Code of Judicial Conduct applies to the conduct of this district justice as a candidate for the office of judge of the Court of Common Pleas.

### B. *Respondent's Advertisements As Misrepresentations.*

We turn now to consider the substance of the violations of Canon 7 charged by the Judicial Conduct Board.

#### 1. The Charges.

In paragraph 7 of the Complaint the Board refers to "flyers, letters, palmcards, and newspaper advertisements utilized by [Respondent's] campaign committee," and attaches nine exhibits (BC–1 to BC–9) which contain the supposedly offending language.

In paragraph 8 of the Complaint the Board refers to three "radio advertisements in the campaign" and then sets forth the supposedly offending text of each.

Then, in paragraphs 9 and 10 of its Complaint the Board asserts that both the written advertisements of paragraph 7 and the radio advertisements of paragraph 8:

[M]isrepresented his position and qualifications in that the materials, whether they were designed to do so or not, leave the impression that the Respondent was a judge of the Court of Common Pleas and not a district justice. (Paragraph 9.)

[W]ould misrepresent his position and qualifications to a reasonably prudent elector in that the materials, whether they were designed to do so or not, leave the impression that the Respondent was a judge of the Court of Common Pleas and not a district justice. (Paragraph 10.)

#### 2. Scope of Inquiry and Standard for Adjudication.

Preliminarily, we mention that it is not apparent why the Board chose to set out the offending nature of the advertisements

---

6. Not, by the way, an illogical extension of the Canon's coverage.

in two paragraphs (9 and 10), or, if there is any difference between them. If, as seems most likely, it was the purpose of paragraph 10 to introduce the construct of "a reasonably prudent elector" as the one who is getting "the [wrong] impression," that leaves us to puzzle over who it is that the Board is alleging is getting "the [wrong] impression" referred to in paragraph 9.

In any event, we hasten to state that the most important business of this Court by this opinion is to clearly state that we are not interested in "impressions" here—by whomever formed. The Board would have us use the standard of "a reasonably prudent elector" for a determination, we suppose, of whether the "impression" was reasonably derived from the supposedly offending advertisements. The vicissitudes and difficulties inherent in such an undertaking are endless. The following questions quickly arise:

1. How would the "reasonable prudence" of any given elector be determined? The Board points to no standard against which the measurement should be (could be) made.
2. Is this Court to conduct a *voir dire* of electors?
3. How many should be summoned?
4. Would the case then become a swearing contest with the decision going to whichever side had the most witnesses testifying what their "impressions" were?
5. Would the Board need a majority? Two thirds? Or, would the testimony of just one (out of, say, 100,000 "reasonably prudent electors") be

enough? (We think, taking the Board's position, that the answer to that question is inescapably "yes," for once that elector has passed the *voir dire* and been certified as "reasonably prudent," the offense is established if he says he got the [wrong] impression.)

■ Unquestionably, this would be lively theatre; but in our experience the Supreme Court does not draft rules and regulations or canons with that end in mind. Nor did it here. Rereading Canon 7 makes that clear. The Canon states:

A candidate ... for a judicial office, ... should not ... misrepresent his identity, qualifications, present position, or other fact.

The Canon forbids *misrepresentations*.[7] It does not speak of "impressions," or of materials which "leave the impression"; nor does it speak of "reasonably prudent electors." Our assignment in this case is discrete and well defined. Our assignment is to determine whether the written materials referred to in paragraph 7 of the Board's Complaint or the radio advertisements referred to in paragraph 8 constitute misrepresentations or whether they don't. That is a simple exercise applying a simple standard: an exercise of determining whether the advertisements are true or false.

3. The Advertisements As Misrepresentations.

There are a limited number of representations said by the Board to be misrepresentations.[8] These are:

7. "MISREPRESENTATION. Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation." *Black Law's Dictionary* (5th ed.1979, 903). This definition was recently adopted by the Pennsylvania Supreme Court in interpreting the word "misrepresentation" used in another rule (Disciplinary Rule 8.4(c)) also promulgated by that court. *Office of Disciplinary Coun-*

*sel v. Anonymous Attorney A,* 552 Pa. 223, 714 A.2d 402 (1998).

8. Considering the allegations of paragraphs 9 and 10 of the Complaint and of assertions made by Board counsel at oral argument, whether the Board is asserting that the representations at issue are "misrepresentations" is open to question. It seems reasonable to conclude that the Board's position can be described in either of two ways:

1.  The representation that Respondent has "judicial experience," and is the "only candidate with judicial experience." (Radio ad No. 1, para. 8, Board Complaint, BC–1, BC–2, BC–3, BC–4, BC–5, BC–7.)

2.  The representation that Respondent has "served as a judge on the front lines of our legal system." (Radio ad No. 3, para. 8, Board Complaint.)

3.  The photographs of Respondent wearing his judicial robe (hereinafter referred to as "Robe Photos"). (BC–1, BC–2, BC–3, BC–4, BC–5, BC–6, BC–7.)

4.  The presentation in the print ads announcing the office for which Respondent was a candidate as follows:

"DAVE MILLER
JUDGE"

5.  Statements attributed to various citizens:

"You are a fair and just judge. You listen."

"You have set a good example . . . that the justice system is fair."

(1) whether or not there is a "misrepresentation," the canon is violated if the representation "leaves the [wrong] impression," or
(2) if the representation "leaves the [wrong] impression" that itself proves that the representation must have been a "misrepresentation."
There is nothing whatsoever that would justify either of these approaches to Canon 7.

9.  We are unable to detect what the Board finds offensive in Radio ad No. 2 which we set out here.

> Announcer: Dave Miller—Making Lancaster Safer. The following message by Dave Miller is proudly paid by the David Miller for Judge Committee.
> David Miller: I'm Dave Miller and I wish to thank the hundreds of people who kindly greeted me at front doors all across Lancaster County. I appreciate your hospitality and your time to better inform me. I will keep your comments and ideas in mind while serving you as a Judge of the Court of Common Pleas. Thank you for your support and vote on May 18.

"Everyone gets a fair hearing in Judge Miller's courtroom" (BC–1).

6.  The references to Respondent's "judicial temperament" (BC–2, BC–3, BC–4, BC–7), "judicial service" and "judicial responsibilities" (BC–6).[9]

We will address each of these representations but will first set down a rudimentary concept which is, as well, a rudimentary fact: a district justice is a judge. We would not have thought that this many years after the establishment of our judicial system in this Commonwealth that this would be open to question. As long ago as 1909 our Supreme Court, in a pointedly unequivocal assertion, said:

> This appellant [district justice] was as much a judge, though in a limited sphere, as the judicial officer [a Common Pleas Court judge] by whose decree the appellees would have him removed from office.

*Bowman's Case*, 225 Pa. 364, 368, 74 A. 203, 204 (1909).

Any definition of "judge" will include a description of the duties performed by district justices.[10]

Certainly, there is no misrepresentation there and, even using the Board's approach, even the most readily impressionable elector couldn't get the impression from that ad that Respondent was a Common Pleas judge rather than a district justice.

10.  *See, e.g.*, **a.** "**Judge:** a public official vested with the authority to hear, determine, and preside over legal matters brought in court, *also* one (as a justice of the peace) who performs one or more functions of such an official." Merriam–Webster's Dictionary of Law 1999. **b.** "**judge (PERSON)** *noun* [C]—A person who is in charge of a trial in a court and describes how a person who is guilty of a crime should be punished, or who makes decisions on legal matters." Cambridge International Dictionary of English 1999. **c.** "**Judge**—n. 1. A public officer authorized to hear and determine causes in a court of law; a magistrate charged with the administering of justice." Random House Dictionary of the English Language (Unabridged 1967).

In addition, district justices are repeatedly referred to as judges in numerous legislative and administrative pronouncements.[11]

That district justices are "judges" is not only true in the legalistic and scholarly sense, but also in the argot of the man-in-the-street and in common, everyday usage.

■ Addressing now the six representations alleged by the Board to constitute violations of Canon 7 of the Code of Judicial Conduct, we find:

1. The representations that Respondent had "judicial experience" and that he was the "only candidate with judicial experience" are not misrepresentations. The representations are not false; they are true. The Board does not dispute this; nor could it.

When a district justice goes to work, he enters his courtroom. There he observes the witnesses testify, he makes evidentiary rulings, he hears the lawyers argue, and then he does what all judges do: he adjudicates. He does this day after day; in the process he acquires judicial experience. The Board does not dispute this nor tell us what kind of experience, if not judicial, Respondent is acquiring in this job.

2. The representation that Respondent has "served as a judge on the front lines of our legal system" is not a misrepresentation. The representation is not false; it is true. The Board doesn't dispute this either; nor could it.

It is well known that the first contact most citizens have with our legal system is in the court of a district justice.[12]

3. The photographs of Respondent wearing his "judicial robe"[13] are not misrepresentations. It is the robe he wears everyday, indeed, that he is required to wear,[14] in doing the job he was elected to do. The photographs do not falsely depict his identity nor his present position. As a matter of fact, if it is an informed electorate we are interested in, then a photograph of the candidate which can quickly inform the elector who sees it what the candidate's job is, should be encouraged.[15] On the other hand, a photograph of a judge in mufti could be considered "misleading"—it would certainly be less informative.

Again, the Board does not contend that these photographs constitute misrepresentations. The Board contends that somebody could get the "impression" that Respondent was a Common Pleas Court judge. We are confident that, by Canon 7, the Supreme Court is not attempting to regulate the "impression" someone might take from a photograph.

---

11. Consider, *e.g.*, a. The Special Court Judges Association of Pennsylvania is recognized by the Supreme Court as the official representative of members of the minor judiciary, i.e., the district justices. b. The Administrative Office of Pennsylvania Courts has a regulation pertaining to its Senior Judge Health Program, which states: "A senior judge or district justice (hereinafter referred to collectively as "senior judge") who has worked ....", 204 Pa.Code § 29.9. c. The definition of judicial officer in the Judicial Code, 42 Pa.C.S. § 102 includes district justices. d. Section 103 of the Pennsylvania Crimes Code, 18 Pa.C.S. § 103, defines the term "judge" to include district justices in the exercise of their criminal or quasicriminal jurisdiction. e. District justices are part of the Unified Judicial System of this Commonwealth, 42 Pa.C.S. § 301.

12. As a matter of fact, this notion was reiterated in an article published in the Pennsylvania Bar Association Quarterly, where the author stated: ["district justices] are the court system's front line of defense against violent offenders." Thomas E. Martin, Jr., Esquire, *Criminal Practice before District Justices in Pennsylvania*, 71 Pa. Bar Assn. Quarterly 7 (January, 2000).

13. This is what it is called. *See, e.g.*, Rule 4 of the Rules Governing Standards of Conduct of District Justices.

14. *Id.*

15. Particularly in this election, inasmuch as Respondent was the *only* candidate with judicial experience.

4. The presentation in the print ads which proclaim:

### "DAVE MILLER JUDGE"

is not a misrepresentation. It is a representation, an identification, of the office for which Dave Miller is running. Dave Miller was running for Judge so the representation is truthful.

The Board concedes this and recognizes that the line separating "Dave Miller" from "Judge" is a "convention" which has long been utilized to announce that the person identified above the line is running for the office identified below the line. Once again the Board urges that somebody could get the "impression" that the office designated below the line is the office presently held by Dave Miller. Even if this were so (and even if this Court were to concern itself with "impressions"), this would not be a misrepresentation either, since the Respondent was a "judge" at the time.

5. The statements attributed to various citizens:

"You are a fair and just judge. You listen."

"You have set a good example ... that the justice system is fair."

"Everyone gets a fair hearing in Judge Miller's courtroom."

are not misrepresentations. We suppose the Board objects to the advertisement's references to Judge Miller as a judge. As stated before, such references, such representations, were not untruthful.

6. The references in various of the print ads to Respondent's "judicial temperament," "judicial service," and "judicial responsibilities" are not misrepresentations. How the Board would have a district jus-

tice—or any judge—describe his or her "temperament," "service," or "responsibilities" if not as "judicial," is not known. In any event to describe them as "judicial temperament," "judicial service," and "judicial responsibilities" is not to misrepresent.

Therefore, we hold that Respondent has not violated the proscription of Canon 7.

## C. *Constitutionality of Canon 7.*

In his Omnibus Motion Respondent raises the question of the constitutionality of Canon 7 and expresses the proposition as follows:

> The State and Federal Constitutions prohibit regulation of truthful election speech.

Respondent's Omnibus Motion, page 18. While we certainly agree with that statement, that is not an issue here, for, by Canon 7, the Supreme Court makes no effort to regulate truthful speech. As stated before, the Canon proscribes false speech: "misrepresentations." Since we have held that the advertisements in question here are truthful and not misrepresentations, we need not address putative constitutional issues which might be attendant to state regulation of *false* political speech,[16] such as, whether the false speech must be knowingly so, recklessly so, or only negligently so in order to be susceptible of constitutional regulation, or whether the proper focus of the inquiry should be on the state of mind of the electorate or on that of the candidate.[17]

Thus, we comfortably follow precepts of statutory construction including the presumption that the General Assembly (or the Supreme Court) does not intend to

---

**16.** *See, e.g., Commonwealth v. Wadzinski,* 492 Pa. 35, 45–47, 422 A.2d 124, 130 (1980) and *In re Hon. John M. Chmura,* 461 Mich. 517, 608 N.W.2d 31 (2000).

**17.** *See, Developments in the Law, Elections,* 88 Harv. L.Rev. 1111, 1281, n. 273, "If the con-

stitutional standard were based solely upon the impact of expression, it would require difficult ad hoc judgments about the reaction of the electorate to a particular statement, resulting in great uncertainty and therefore a chill on protected speech."

violate the Constitution,[18] and the instruction that courts should, if at all possible, construe statutes so as to find that they are constitutional,[19] and should construe statutes so as to avoid constitutional questions.[20]

However, we feel obliged to comment upon the concurring opinion filed by Judge Leadbetter:

(a) because we consider it important that the Judicial Conduct Board, as well as future candidates for judicial office, receive a clear message as to how this Court will approach the application of Canon 7 of the Code of Judicial Conduct or Rule 15 of the Rules Governing Standards of Conduct of District Justices in the regulation of political speech during a campaign for judicial office, and

(b) because, in our view, the concurring opinion would furnish a standard which is unclear, unworkable and (it so happens) unconstitutional. Thus, these comments will necessarily include discussion of constitutional issues.

We will address four parts of the concurring opinion.

■ First. The concurring opinion, searching for a definition of the word "misrepresent" in Canon 7, refers to the definition adopted by our Supreme Court in *Office of Disciplinary Counsel v. Anonymous Attorney A, supra.*[21] That definition, taken from Black's Law Dictionary, 5th Edition (1979), p. 903 is as follows:

[Misrepresentation]. Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation.[22]

*Office of Disciplinary Counsel v. Anonymous Attorney A,* 552 Pa. 223, 229–230, 714 A.2d 402, 405 (1998).

The concurring opinion would enlarge the Supreme Court's definition by adding words from Black's which the Supreme Court chose to leave out. It would add the following:

That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists. Colloquially it is understood to mean a statement made to deceive or mislead.

We see no reason to deviate from the Supreme Court's definition. We see no reason to crowd our definitions with colloquialisms or apprehensions. Particularly, when to do so would automatically require examination of the minds of the apprehenders or the misled—an undertaking predestined to give rise to uncertainty and to the controversy which always flows therefrom.[23]

As stated above, we follow the Supreme Court and adopt its definition of misrepresentation which enables this Court to utilize a workable approach employing the familiar and objective test of whether the speech is true or false.

**18.** 1 Pa.C.S. § 1922, *Bentman v. Seventh Ward Democratic Executive Committee,* 421 Pa. 188, 218 A.2d 261 (1966).

**19.** *DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988); *Commonwealth v. Hude,* 492 Pa. 600, 613–14, 425 A.2d 313, 320 (1980).

**20.** *United States v. Butchelder,* 442 U.S. 114, 122, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Heckler v. Mathews,* 465 U.S. 728, 741–42, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984); *Krenzelak v. Krenzelak,* 503 Pa. 373, 381, 469 A.2d 987, 991 (1983).

**21.** Concurring Opinion at 471, n. 2.

**22.** See n. 7, *supra.*

**23.** For comment on the problems which attach where the focus is upon *impact of expression* in the constitutional context see, *Development in the Law, Elections, supra,* p. 16, n. 17, "If the constitutional standard were based solely upon the impact of expression, it would require difficult ad hoc judgments about the reaction of the electorate to a particular statement, resulting in great uncertainty and therefore a chill on protected speech."

Second. The concurring opinion engages in an exercise to determine the "level of scienter"[24] required on the part of this Respondent which would support a finding of a violation of Canon 7.[25]

The trouble is that any investigation of the "level of scienter" in this case is unnecessary and incongruous for there have been no misrepresentations. Certainly, there is no point in examining the state of mind, the mens rea, the level of scienter, of one who has spoken the truth. Thus, the Supreme Court's decisions in *Office of Disciplinary Counsel v. Surrick*, 561 Pa. 167, 749 A.2d 441 (2000) and *Office of Disciplinary Counsel v. Anonymous Attorney A*, 552 Pa. 223, 714 A.2d 402 (1998), cited in the concurring opinion, have no application here for, in those cases, the Supreme Court was dealing with falsehoods—"misrepresentations"[26]—acknowledged to be so. In those cases the Supreme Court was addressing the question of what level of scienter it would require in order to warrant the imposition of discipline on the respondent attorneys who had spoken the false. It decided that it would require a finding that the respondents had uttered the falsehoods deliberately or recklessly in order to warrant a disciplinary sanction.[27] By contrast, what difference does it make if one tells the truth deliberately, recklessly, negligently, or accidentally? Such a truth-telling lawyer or judge will have violated no rule or canon, and no one will be imposing any sanctions on such a teller of the truth.

Third. We advert to those passages of the concurring opinion which refer to sec-

tions of the Restatement of Torts (Second) which delineate the elements of conduct which give rise to a cause of action sounding in tort based on various types of misrepresentations. Among those so mentioned are negligent misrepresentations covered in Section 528 of the Restatement. These, the concurring opinion states "may occur where truth is carelessly or incompletely communicated."[28] The concurring opinion then declares:

> The standard for clarity of communication during a campaign for judicial office must be *at least* as high as that required to avoid ... tort liability.[29] (Emphasis added.)

While the standard for the imposition of tort liability for a misrepresentation may be negligence, the fact is, that regulation of negligently false political speech is unconstitutional. *A fortiori* is it unconstitutional to regulate false political speech which is the product of *less* culpability than negligence.

The Supreme Court of Pennsylvania, in *Commonwealth v. Wadzinski*, 492 Pa. 35, 422 A.2d 124 (1980), stated "the basic propositions that govern a First Amendment challenge to ... laws [which regulate campaign speech] are well settled." *Id.* at 43, 422 A.2d at 129. The Court stated those propositions included:

> — the first Amendments guarantee of freedom of expression has long been among our most fundamental and carefully guarded rights. "Whatever the explanation for the ascendancy of the First Amendment protection, courts have remained

**24.** Concurring Opinion at 472–73.

**25.** It is noted that the Board would require no scienter: Board Complaint, paragraphs 9 and 10 "whether [the materials] were designed to or not." Such a standard would be unconstitutional *ab initio*, eliminating entirely, as it does, any consideration of the state of mind of the candidate, which, of course, is central to constitutional regulation of political speech.

**26.** In violation of Rule of Professional Conduct 8.4(c). This rule prohibits "misrepresen-

tations," not "affirmative misrepresentations" as stated in the concurring opinion (Concurring Opinion at 472–73).

**27.** Even though, in those cases, the speech involved was not political speech and, thus, not entitled to the high level of protection accorded such speech.

**28.** Concurring Opinion at 472.

**29.** *Id.* at 472.

particularly sensitive to government regulation that tends to impinge on expressive freedom." *Alderman v. Philadelphia Housing Authority,* 496 F.2d 164, (3rd Cir.), *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974).

— There is practically universal agreement that free discussion of candidates for political office is essential to the functioning of a democratic society. *Mills v. Alabama,* 384 U.S. 214, 218–19, 86 S.Ct. 1434, 1436–37, 16 L.Ed.2d 484 (1966).

— Such discussions are afforded "the broadest protection" in order to "assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Buckley v. Valeo,* 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976).

— This broad grant of protection reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964).

— Accordingly, the First Amendment guarantee of free speech "has its fullest and most urgent application to the conduct of campaigns for public office." *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971).

*Commonwealth v. Wadzinski,* 492 Pa. at 43–44, 422 A.2d at 129.

It requires no temerity to say that propositions such as these played no part in the deliberations of the Restatement reporters in establishing the elements required to set out a civil cause of action which they styled "Negligent Misrepresentation." Consequently, reference to tortious speech which may give rise to civil liability only succeeds in losing ground in the quest for a workable, constitutional standard for the regulation of political speech.[30]

Fourth. Our Supreme Court, in *Wadzinski,* referring to the principles and precedents set forth above, stated:

> It follows ... that any state law regulating campaign speech requires, in the face of a properly presented First Amendment challenge, the most exacting judicial scrutiny. This is not to say, however, that any attempt to regulate this subject matter is automatically unconstitutional. First, it is clear that not all speech uttered during the course of a political campaign is constitutionally protected. "[T]he use of the known lie as a tool [for political ends] is at once at odds with the premises of a democratic government and with the orderly manner in which economic, social or political change is to be effected." *Garrison v. Louisiana,* 379 U.S. 64, 85, 85 S.Ct. 209, 221, 13 L.Ed.2d 125 (1964). Calculated falsehoods delivered during a campaign are accordingly subject to no greater constitutional immunity than such statements receive when made in other contexts. It is thus clear that a state may apply its general laws of defamation to political speech in order to protect the reputational interests of its citizens so long as such laws comport with the "actual malice" standard enunciated by the United States Supreme Court in *New York Times Company v. Sullivan, supra.* See *Ocala Star–Banner Co. v. Damron,* 401 U.S. 295, 91 S.Ct. 628 28 L.Ed.2d 57 (1971); *Monitor Patriot Co. v. Roy, supra. Likewise, state regulation whose scope is limited to false campaign statements knowingly or recklessly made may be sustained. New York Times Co. v. Sullivan, supra* (emphasis added).

*Id.* at 45, 422 A.2d at 129–130.

There is little doubt that the Supreme Court of Pennsylvania would find that the

---

**30.** Equally ill-guided is the reference in the concurring opinion to the criminal statute making "false or misleading" advertising a crime.

standard which the concurring opinion would impose is an impermissible regulation of political speech because it extends the reach of Canon 7B.(1)(c) beyond "false campaign statements knowingly or recklessly made" to include:

   a.  [presumably] false statements negligently made,[31]

   b.  truthful statements "carelessly or incompletely communicated," [32]

   c.  "technically truthful [statements] which mislead the recipient," [33]

   d.  truthful statements "which the maker knows or believes to be materially misleading because of [their] failure to state additional or qualifying matter," [34]

   e.  [presumably] false statements made with a degree of mental culpability less than that required for negligent statements,[35]

   f.  "half-truths," [36]

   g.  "misleading generalizations," [37]

   h.  "materials which might have any tendency to be misunderstood." [38]

Such extensions of Canon 7B.(1)(c) are facially unconstitutional. The language of the Pennsylvania Supreme Court, quoted above, in *Wadzinski* is enough to make this conclusion obvious. Further, a recent decision by the Supreme Court of Michigan provides a thorough elucidation of the constitutional principles of free political speech against which that court was required to scrutinize Michigan's counterpart of our Canon 7B.(1)(c). *In re Hon. John M. Chmura*, 461 Mich. 517, 608 N.W.2d 31 (2000).

In that case, the Supreme Court of Michigan was reviewing a decision of its Judicial Tenure Commission which had decided that some campaign literature put around by the respondent, Chmura, which was very rough on his opponent, violated Canon 7(B)(1)(d) of Michigan's Code of Judicial Conduct. Chmura challenged the decision claiming that the Michigan canon was an impermissible regulation of political speech. The canon provided that a candidate for judicial office

> should not use or participate in the use of any form of public communication that the candidate knows or reasonably should know is false, fraudulent, misleading, deceptive, or which contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading, or which is likely to create an unjustified expectation about results the candidate can achieve.

*Id.* at 519, 608 N.W.2d at 33. The Michigan Supreme Court held the canon was "facially unconstitutional," *Id.* at 518–19, 541, 608 N.W.2d at 33, 36 and amended the canon so that it now provides that a candidate for judicial office

> should not knowingly or with reckless disregard, use or participate in the use of any form of public communication that is false.

*Id.* at 519, 541, 608 N.W.2d at 33, 36.

Following the principles laid down by the United States Supreme Court noted by the Pennsylvania Supreme Court in *Commonwealth v. Wadzinski, supra*, the Michigan Court concluded that the canon was facially unconstitutional

> because it [was] not narrowly tailored to serve the state's compelling interest in

---

**31.**  Concurring Opinion at 472.

**32.**  *Id.*

**33.**  *Id.*

**34.**  *Id.* at 472. This standard is lifted from the Restatement of Torts and describes the elements of a tort styled fraudulent misrepresentation.

**35.**  "The standard for clarity of communication during a campaign for judicial office must be at least as high as that required to avoid tort liability." *Id.* at 472.

**36.**  *Id.*

**37.**  *Id.*

**38.**  Concurring Opinion at 474.

maintaining the integrity of the election process and ensuring public confidence in the judiciary.

*Chmura,* 461 Mich. at 529–30, 608 N.W.2d at 38.

Adhering to the aforementioned principles, the court stated that in "determin[ing] the constitutionality of an ethics rule, [it must] weigh the state's interests against the candidate's First Amendment interest in the kind of speech at issue" [citing *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991)]; that Canon 7(B)(1)(d) "restricts political expression that 'occupies the core of the protection afforded by the First Amendment'" [citing *McIntyre v. Ohio Elections Comm.,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995)]; and that it would "apply exacting scrutiny and uphold the canon only if it is narrowly tailored to serve a compelling state interest" [citing *McIntyre, supra,* at 347, 115 S.Ct. 1511]. *Id.* at 532, 608 N.W.2d at 39. See also, *Commonwealth v. Wadzinski, supra,* at 129.

The court then affirmed that Canon 7(B)(1)(d) did serve compelling state interests. Citing *Brown v. Hartlage,* 456 U.S. 45, 53, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982), the court held that the state had an interest in preserving the integrity of the election process, and that "this interest extends to protecting the process from distortions caused by false statements." *Id.* at 61, 102 S.Ct. 1523. *Chmura,* 461 Mich. at 534, 608 N.W.2d at 40. The court also acknowledged the state's interest in preserving the integrity and reputation of the judiciary, *Id.* at 535, 608 N.W.2d at 40, but held that Canon 7(B)(1)(d) was unconstitutional "because it [was] not narrowly tailored to further [those] interest[s]." *Id.* at 535, 608 N.W.2d at 40.

In support of this holding the court again referred to *Brown v. Hartlage, supra.* and noted that in that case the United States Supreme Court held that

absent a showing that the candidate made the disputed statement ... with knowledge of its falsity, or that he made it with reckless disregard of its falsity, the sanction was inconsistent with the atmosphere of robust political debate protected by the First Amendment. *Brown, supra,* at 62, 102 S.Ct. 1523.

The Court pointed out that *Brown, supra,* at 60–61, 102 S.Ct. 1523 held that

erroneous statement is inevitable in free debate and ... it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive.' *New York Times Co. v. Sullivan,* 376 U.S. 254, 271–272, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964), quoting *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

*Chmura,* 461 Mich. at 536, 608 N.W.2d at 41.

The Michigan Supreme Court then found that Canon 7(B)(1)(d) was an impermissible regulation of campaign speech because it

attaches adverse consequences to a candidate's statements that are not knowingly false or made with reckless disregard for truth or falsity.

*Id.* at 536–37, 608 N.W.2d at 41. The Court pointed out that the canon impermissibly extended to:

— any statement that the candidate "reasonably should know is false, fraudulent, misleading, [or] deceptive."

— a statement that "contains a material misrepresentation of fact or law."

— a statement that "omits a fact necessary to make the statement considered as a whole not materially misleading."

— a statement that is "likely to create an unjustified expectation about results the candidate can achieve."

*Id.* The similarity of the provisions of the Michigan canon found by the Michigan Court to be impermissible regulation and the various meanings which the concurring

opinion assigns to the word "misrepresent" in our Canon 7B.(1)(c) cannot be missed.

The Michigan Supreme Court then asserted that

> Canon 7(B)(1)(d) greatly chills debate regarding the qualifications of candidates for judicial office .... A candidate for judicial office faces adverse consequences for statements that are not false, but, rather, are found misleading or deceptive. Further, the canon extends beyond the candidate's actual statement to permit discipline for factual omissions. Faced with the prospect of future disciplinary action, a candidate's safest course may sometimes be to remain silent on many issues.

*Id.* at 539, 608 N.W.2d at 42. Thus is perspective given to the chilling improvisation of the concurring opinion that

> relatively small distinctions within the campaign literature may well change significantly the impression conveyed, *and thus the result of a disciplinary action* (and judicial candidates are well advised to scrupulously avoid distributing materials which have any tendency to be misunderstood). (Emphasis added.)

Concurring Opinion at 474.

The Michigan Supreme Court recognized that

> the broad language of the canon is intended to promote civility in campaigns for judicial office. Nevertheless, the state's interest in preserving public confidence in the judiciary does not support the sweeping restraints imposed by Canon 7(B)(1)(d). The prohibition on misleading and deceptive statements quells the exchange of ideas because the safest response to the risk of disciplinary action may sometimes be to remain silent. The Supreme Court explained in *Brown, supra,* at 61, 102 S.Ct. 1523 that the preferred First Amendment remedy for

misstatements and misrepresentations during the campaign is to encourage speech, not stifle it.

*Id.* at 540, 608 N.W.2d at 43.

There is no doubt that, under the principles of the United States Supreme Court, applied in *Chmura* by the Supreme Court of Michigan, the various proscriptions on campaign speech proposed in the concurring opinion are unconstitutional. Furthermore, the language of the canon as amended by the Michigan Supreme Court, i.e.:

> a candidate for judicial office should not knowingly, or with reckless disregard, use or participate in the use of any form of public communication that is false.

mirrors almost exactly the language the Supreme Court of Pennsylvania used in describing the standard in Pennsylvania:

> State regulation whose scope is limited to false campaign statements knowingly or recklessly made may be sustained.

*Commonwealth v. Wadzinski, supra,* at 130. So, we have no hesitance in concluding that the Pennsylvania Supreme Court would be as intolerant of the standards for the regulation of campaign speech of judicial candidates suggested in the concurring opinion as was the Michigan Supreme Court of the standards imposed by its Canon 7(B)(1)(d).

Finally, we believe it is important to point out that the people of Pennsylvania have provided that we shall elect our judges, just as we do our legislators and executives.[39] While it is true that in some circumstances we hold our judges to different—and often more exacting—standards than we do other public officials, we have chosen a method of judicial selection which takes place in the arena in which the First Amendment affords its broadest protection. That a candidate seeks judicial office does not diminish the nature or scope of

---

**39.** In his concurring opinion, Judge Byer refers to the "absurdity" of this system and professes that the system [of electing judges] is no good for the citizens of the Common-wealth. We believe that the citizens of the Commonwealth know best what's good for themselves.

that protection. Any difference between the offices sought bears only on the nature of the state's interest in regulating a candidate's speech. To hold otherwise would open the floodgates for the electoral decisions of our citizens to be tarnished if not subject to outright repeal by dissatisfied private interests. A narrow standard already recognized by the Supreme Court fittingly places on our citizens the right to consider the information before them and act accordingly. An electoral arena relying on a broad interpretation of First Amendment rights and responsibilities is far preferable to encouraging a system of subjective review that could easily create a climate that would have the opposite effect of that intended, i.e., an endless stream of complaints whose cumulative effect would be to the detriment of the judiciary's image and integrity.

## ORDER

PER CURIAM.

AND NOW, this 26th day of September, 2000, it is hereby ORDERED that the Complaint against the Respondent is dismissed.

LEADBETTER, J., files a concurring opinion in which BYER, J., joins.

BYER, J., files a concurring opinion in which LEADBETTER, J., joins.

MILLER, J., did not participate in the consideration or disposition of this case.

LEADBETTER, Judge, concurring.

I concur in the result reached by the majority. However, for the reasons that follow, I am unable to join in its analysis. As is noted by the majority, the Board asserts that Miller's campaign advertisements and materials, whether by design or not, created a false impression that Miller was a judge of the court of common pleas, thus misrepresenting Miller's position and qualifications in violation of Canon 7 of the Code of Judicial Conduct. The Board contends a violation has been proven if we determine that the campaign materials, even if technically truthful, are of a nature that would mislead a reasonably prudent elector.

The majority rejects the theory upon which the Board proceeds by stating flatly that all representations must be viewed as absolutely true or absolutely false and that only those which are completely and literally false amount to misrepresentations within the contemplation of Canon 7.[1] I disagree. The majority's approach ignores both the complexities of human speech and well-established law in this area. I begin by noting that the Canon specifically proscribes misrepresentations, not false statements, so it is with that term we must begin.

Neither this court nor its predecessor disciplinary tribunal has specifically defined the term "misrepresent" as it is used in Canon 7B(1)(c). However, in a case[2] interpreting this term in the context of a violation of Rule of Professional Conduct 8.4(c)[3] our Supreme Court recently quoted, in part,[4] the definition of misrepresen-

1. The majority also characterizes the standard advocated by the Board as a subjective one, pointing out the inherent difficulties in establishing what actual voters believed, and which of them were "prudent." The Board has suggested nothing of the kind. The standard it espouses is simply a garden variety reasonable man test, no different from that applied by juries in a wide range of civil and criminal cases.

2. *Office of Disciplinary Counsel v. Anonymous Attorney A,* 552 Pa. 223, 229, 714 A.2d 402, 405 (1998).

3. Rule 8.4(c) provides that "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

4. The majority correctly notes that the court quoted only the first two sections of the definition, omitting the latter two. However, I attribute no significance to this omission since *Anonymous Attorney A* dealt with statements which were literally false. Nothing in that opinion provides any support for the majority's conclusion that the last two parts of

tation set forth in Black's Law Dictionary. That definition, in full, reads as follows:

Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation. That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists. Colloquially it is understood to mean a statement made to deceive or mislead.

Black's Law Dictionary 1001 (6th ed.1990).

Moreover, similar language can be found in sections of the Restatement (Second) of Torts dealing with misrepresentation. Under § 528, negligent misrepresentation may occur where truth is carelessly or incompletely communicated. Pursuant to § 529 fraudulent misrepresentation may include a statement "of the truth so far as it goes but which the maker knows or believes to be materially misleading because of its failure to state additional or qualifying matter." Indeed, although the term misrepresentation is not used, it may be noted that our statute prohibiting deceptive business practices predicates criminal liability upon either false or misleading statements in advertising and for other business purposes.[5] In other words, both the civil and criminal laws treat statements which are misleading as the functional equivalent of statements which are literally false.

The standard for clarity of communication during a campaign for judicial office must be at least as high as that required to avoid criminal and tort liability. Nothing less can be tolerated in light of the high standard of conduct expected of our judges and the judicial candidates, and the great importance of maintaining public respect for the judiciary. Were the public to come to expect candidates for judicial office to engage in the kind of half-truths and mis-

leading generalizations which they often cynically take for granted in other elections, confidence in the judicial system itself would suffer. Accordingly, I agree with the Board that the term "misrepresentation" as used in Canon 7 B(1)(c) must include the dissemination of campaign materials containing technically truthful information which misleads the recipient into a false understanding of the facts.

This view, however, leads to issues which the majority's approach sidesteps, for to say that a candidate must avoid misleading the electorate does not end the inquiry. We must still confront the questions whether, 1) in order to run afoul of the canon, a candidate must *intend* to mislead or, as the Board seems to suggest, must simply do so, and 2) if some level of *scienter* is required, whether it is to be judged by an objective or a subjective standard. While these issues have not been addressed in the present context, my analysis is informed by our Supreme Court's decisions in *Office of Disciplinary Counsel v. Anonymous Attorney A*, 552 Pa. 223, 714 A.2d 402 (1998) and *Office of Disciplinary Counsel v. Surrick*, 561 Pa. 167, 749 A.2d 441 (2000). Both those cases involved the standards for judging affirmative misrepresentations prohibited by Rule of Professional Conduct 8.4(c) .[6] In *Attorney A*, the court examined the approach taken by various other states and announced that in Pennsylvania "a culpable mental state greater than negligence is necessary to establish a prima facie violation of Rule of Professional Conduct 8.4(c). This requirement is met where the misrepresentation is knowingly made or where it is made with reckless ignorance of the truth or falsity thereof. . . . [F]or the purpose of establishing a prima facie case, recklessness may be described as the deliberate closing of one's eyes to facts that one had a duty to see . . . ." 552 Pa. at 233,

this definition do not apply to the disciplinary rules and canons.

**5.** See 18 Pa.C.S. Section 4107.

**6.** *See* n. 2 *infra.*

714 A.2d at 407.[7] Conviction, as opposed to a prima facie case, must be based upon "clear and satisfactory proof." *Surrick,* 561 Pa. at 174, 749 A.2d at 445. Finally, this determination is to be based on an objective rather than a subjective standard.

> [T]o utilize a subjective approach would prevent this court from establishing a clear demarcation as to the standard of behavior that is expected from all members of the bar. Just as the law measures liability against the standard of the reasonable man, so do the rules of disciplinary conduct measure the ethical behavior of the members of the bar by the standard of the reasonable lawyer.

*Id.* at 175, 749 A.2d at 445.

I can see no ground in either the language or the purposes underlying RPC 8.4 and Canon 7 to distinguish between the two rules with respect to these issues. Accordingly, I would hold that the standards for proof of misrepresentation artic-ulated in *Attorney A* and *Surrick* apply with equal force to a charge of violation of Canon 7 B(c).[8] Thus in this case, to prove a violation the Board would have to establish two elements: first that Respondent's campaign literature was objectively materially misleading, and second that the misleading nature of the material was so apparent that Respondent must either have intended to convey the false impression or have deliberately shut his eyes to the false impression he was creating. Further, Respondent's state of mind should be judged by that of a reasonable man in his circumstances; his subjective intent is irrelevant.

Reviewing the evidence in the light of these standards I agree with the majority that Miller is entitled to dismissal.[9] Even assuming that some voters could infer from Miller's campaign literature that he was an incumbent judge of the common pleas court, any such suggestion in the materials is so insubstantial as to fall far short of meeting the Board's burden of proof. Although referring to Miller as a

---

**7.** We note that in *Surrick,* the court made clear that the standard announced in *Attorney A* did not amount to an abrupt and fundamental shift from prior law, but instead simply clarified existing law. Thus "clear and satisfactory proof that Respondent acted recklessly" is the yardstick by which we measure even that conduct occurring prior to the date *Attorney A* was decided. *Surrick,* 561 Pa. at 174, 749 A.2d at 445.

**8.** The majority engages in an extended discussion of whether, under this test, the Canon would run afoul of the first amendment. In my judgment, it is unwise to discuss the constitutional issue in abstract dictum in a case where we have found no violation of the Canon. Nonetheless, I must register my view that I disagree with the majority's constitutional analysis. In *Stretton v. Disciplinary Board of the Supreme Court of Pennsylvania,* 944 F.2d 137 (3d Cir.1991), Canon 7's prohibition against a candidate's "announcing his views on disputed legal or political issues" was upheld, when construed to relate to issues which may come before the court. It would seem self-evident that if honest discussion of issues by judicial candidates may constitutionally be curtailed in order to "protect the judicial process from being misjudged in the minds of the public" [944 F.2d at 142, quoting *Cox v. Louisiana,* 379 U.S. 559, 565, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965)] and to protect the "State's interest in the quality of its judiciary," [*Id.,* (quoting *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 848, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), Stewart, J., concurring)], there can be no serious question that our Supreme Court may bar judicial candidates from issuing misleading statements intended to deceive. Finally, I note that the majority's discussion is based, at least in part, upon deeming unconstitutional a construction of the Canon which would prohibit negligent statements. The standard I have advocated, however, adopts our Supreme Court's construction of the parallel disciplinary rule in *Attorney A,* to wit, that only statements knowingly or recklessly made are prohibited. This fully comports with that court's discussion of first amendment limitations in *Commonwealth v. Wadzinski,* 492 Pa. 35, 45, 422 A.2d 124, 129–30 (1980), and I believe that it satisfies the requirement that the construction be narrowly tailored to serve the state's compelling interest in the integrity of the judiciary. *Stretton,* 944 F.2d at 141.

**9.** In the context of an omnibus motion, we must dismiss only if we determine, assuming all the facts and reasonable inferences therefrom in the light most favorable to the Board, that the Board cannot meet its burden of proof as a matter of law.

judge,[10] the materials do not disguise the fact that he was a district justice seeking election to the court of common pleas. In all but one photo of Miller in his judicial robe (which he wears in his official duties as a district justice), the wall plaque with the seal of the District Court is clearly discernable. Other than this one photo and a small four square inch advertisement placed in two Lancaster area newspapers, Miller's campaign materials make perfectly clear that Miller is a district justice. The consistent message of all of the materials is experience, but not necessarily incumbency.

As a general matter, determinations of this sort are highly fact intensive. Relatively small distinctions within the campaign literature may well change significantly the impression conveyed, and thus the result of a disciplinary action (and judicial candidates are well advised to scrupulously avoid distributing materials which might have any tendency to be misunderstood). However, the evidence presented in this case is undisputed and the inferences to be drawn from that evidence, which amounts to the Board's entire case, are clear. If there was any suggestion in Miller's campaign materials that he was a common pleas judge, it was so obscure that no rational factfinder would draw an inference that a reasonable candidate in Miller's position must have intended to create that misimpression or deliberately shut his eyes to the fact that he was doing so.

Accordingly, I agree that the omnibus motion must be granted and the complaint dismissed.

BYER, J., joins in this concurring opinion.

10. In this regard, I fully agree with the majority that while the word "judge" may be a title specifically designating particular judicial officers, it is also a generic term commonly understood to refer to *all* judicial officers. Based upon this common understanding of the word, I can find no affirmative misstatement in Miller's references to himself as a judge.

BYER, Judge, concurring.

I join in Judge Leadbetter's opinion, which I believe correctly states the law.

There is a likelihood that Respondent was attempting to create or reinforce an impression that he was serving as a judge of the court for which he was a candidate in the election, the Court of Common Pleas. This was a contested, partisan election. There is a perception that incumbents have an advantage in such elections. Respondent could have campaigned as "District Justice of the Peace," but I think it probable that he used the generic term "Judge" in order to take advantage of the ambiguity inherent in the use of that term. He was not the first to do so, and I feel safe in saying that he will not be the last to take advantage of that ambiguity.

In light of the standard of culpability and the burden of proof, as expressed in Judge Leadbetter's opinion, I agree that the charges must be dismissed. Respondent came close to the line at times, but I cannot say that the Board would be able to establish by clear and convincing evidence that he crossed it. Not only is the term "Judge" ambiguous, but the circumstances are ambiguous as well, in that Respondent did, in less prominent fashion, correctly state that he was a District Justice.

This case highlights the continued absurdity of our system of electing judges in partisan elections.[1] Candidates for no other elected office are subject to being hauled before a court or other tribunal and being subject to possible sanctions based upon allegations of misleading voters about

1. Pennsylvania is one of only eight states which continues to select all members of the judiciary by partisan elections. *See* American Judicature Society, *Judicial Selection in the States: Appellate and General Jurisdiction Courts* (rev. ed. July 1999).

their credentials.[2] Our system singles out judicial candidates for such special treatment, because our system views courts as special, in the sense that the judiciary is supposed to be a non-political branch of government. We prohibit our judges from being involved in politics, so we expect more of candidates for judicial office in order to preserve the public's confidence that the courts are above politics.

It simply makes no sense to select non-partisan, non-political judges by a system of partisan, political election.[3] Until this Commonwealth has the wisdom to switch to a method of judicial selection that does not require partisan elections, situations like that presented by this case will persist.

I do not fault the Board for trying to do its best in the face of an inherently flawed and illogical system of judicial selection. Nevertheless, for the above reasons, I concur in the result.

LEADBETTER, J., joins in this concurring opinion.

---

**2.** As Judge Leadbetter's Concurring Opinion observes, such conduct by political candidates unfortunately is taken for granted in elections for all other elected offices. Leadbetter, J., Concurring Opinion at 472.

**3.** A recent article notes, "U.S. Supreme Court Justice John Paul Stevens once compared judicial elections to 'allowing football fans to elect the referees'...." "Campaign Contributions Corrupt Judicial Races," USA Today, Sept. 1, 2000, page 16A.